[No. H004004. Sixth Dist. Aug. 31, 1989.]

ROBERT L. HAMILTON, Plaintiff and Appellant, v.
TOWN OF LOS GATOS et al., Defendants and Respondents.

COUNSEL

Mary Jo Levinger, Town Attorney, for Defendants and Respondents.

Preston W. Hill for Plaintiff and Appellant.

OPINION

CAPACCIOLI, Acting P. J.—This appears to be a case of first impression. It arises from the denial of a peremptory writ of mandate. The issue before us is whether California Government Code section 87100[1] precludes a city council member from obtaining a tape recording of a closed session of the town council and its attorney, when that council member was voluntarily absent from the closed session because he had a financial conflict of interest in the subject discussed during the closed session.

We find that the superior court properly denied the writ. We hold that section 87100, under the facts of this case, precludes the council member from obtaining the tape.

FACTS

Robert L. Hamilton is a town council member for the Town of Los Gatos. In 1987, the town council was considering the formation of a special parking assessment district in the central business area of Los Gatos. Hamilton managed a business within the proposed assessment district. In February 1987, the town attorney advised Hamilton to abstain from voting on issues pertaining to the parking district because of Hamilton's business. The town attorney sought and received an advice letter from the Fair Political Practices Commission (FPPC) determining that Hamilton's business posed a financial conflict of interest with regard to the parking district. Hamilton subsequently stepped down from his chair and abstained from voting on

---

[1] Hereafter, all statutory references are to the California Government Code unless otherwise noted.

issues pertaining to the parking district, although he stated that he disagreed with the FPPC letter.

On June 12, 1987, several people affected by the proposed parking district filed a class action, Farwell v. Los Gatos (Super. Ct. Santa Clara County, 1987, No. 631093) against the town, alleging that the formation of the parking district was unconstitutional. Hamilton does not appear to have been included within the plaintiff class.

On June 22, 1987, the town council held a town meeting, including a closed session to discuss the Farwell litigation and another matter: the town's initiation of litigation against downtown businesses not in conformance with an already existing parking ordinance. Hamilton voluntarily left the council during this closed session because of his conflict of interest.[2] The closed session was tape-recorded pursuant to section 54957.2.

Hamilton subsequently asked the town clerk, Rose Aldag, to permit him to listen to the tape of the closed session. She refused. Hamilton then filed a petition for a writ of mandate to require the town to make the tape available to him.

The superior court, after considering the pleadings and holding two hearings, including an in camera review of the tape, denied the petition. The court noted that Hamilton had conceded that he was disqualified because of a conflict of interest from voting on matters pertaining to the parking district. The court found that the closed session related entirely to the Farwell litigation and that the session was not subject to public disclosure under the Brown Act, section 54956.9. The court further found that because Hamilton was disqualified from acting or participating in the discussion between the council and its attorney, he had no greater right to the tape than the public at large. Finally, the court held that disclosure to Hamilton would constitute waiver of the attorney-client privilege. The court therefore denied the writ.

Hamilton timely appeals.

## ISSUE

Does section 87100 prohibit a city council member from obtaining a tape recording of a closed council session where the council member has a financial conflict of interest in the subject matter of the closed session, and

---

[2] Hamilton's business also did not conform to the existing parking ordinance.

where the session was closed to permit the council to discuss pending litigation with its attorney?

## STANDARD OF REVIEW

█ Where, as here, the essential facts are undisputed, we review the denial of a writ of mandate independently, as a matter of law. (See *Karpe* v. *Teachers' Retirement Bd.* (1976) 64 Cal.App.3d 868, 870 [135 Cal.Rptr. 21].)

## DISCUSSION

█ Hamilton contends that as a town council member, he was entitled by statute to hear the tape of the closed session, even though he was disqualified because of a financial conflict of interest from actively participating in decisions made during that closed session. The Town of Los Gatos, on the other hand, argues that section 87100's prohibition against participation includes a prohibition against Hamilton acquiring knowledge about the closed session by later obtaining the tape. The town further argues that regardless of section 87100, Hamilton is barred by the attorney-client privilege from compelling disclosure of the tape, as it contains "confidential communications regarding pending litigation" between the town and its attorney.

We note as a preliminary matter that the use of a writ of mandate is proper as a means of compelling the town to produce the tape. (See § 54957.2, subd. (a); Code Civ. Proc., § 1085; cf. *State Board of Equalization* v. *Watson* (1968) 68 Cal.2d 307, 311 [66 Cal.Rptr. 377, 437 P.2d 761].) █ We also note that, although the parking district has apparently been formed, this appeal is not moot. It presents issues of statutory interpretation which are of general public interest and which are likely to recur. (See *Darley* v. *Ward* (1982) 136 Cal.App.3d 614, 623-624 [186 Cal.Rptr. 434].)

Finally, we point out that we have confined our review to the questions concerning section 87100 and the attorney-client issue. We need not determine whether the June 1987 council session was properly closed under the Brown Act, section 54956.9, because Hamilton does not raise this issue on appeal. We therefore have not reviewed the tape recording. Rather, we assume for purposes of this appeal that the session related, as the superior court found, to the pending *Farwell* litigation and that it was properly closed under section 54956.9. We turn now to the statutes at issue.

Two statutory acts relate to this case. The Political Reform Act of 1974, section 81000 et seq., governs the disqualification of a public official in cases

of financial conflict of interest. The Brown Act, section 54950.5 et seq., dictates when public agencies, including town councils, may conduct closed sessions, and also dictates who may gain access to the records of such closed sessions. We examine the Brown Act first.

## The Brown Act

The general rule under the Brown Act (the Act) is that all meetings of the legislative body of a local agency shall be open and public. (§ 54953; *Sutter Sensible Planning, Inc.* v. *Board of Supervisors* (1981) 122 Cal.App.3d 813, 824 [176 Cal.Rptr. 342].) The purpose of the open meeting rule is to permit the people to remain informed so that they may retain control over those to whom they have delegated authority. (§ 54950.) The Act permits closed sessions in certain circumstances, however. In particular, the legislative body of a local agency can hold a closed session to confer with its attorney concerning pending litigation, when such a discussion would prejudice the local agency if the discussion were held in open session. (§ 54956.9.)[3] The Act permits the local agency to record such a closed session. (§ 54957.2.) The recording is not a public record and shall be kept confidential. (*Ibid.*) It "shall be available only to members of the legislative body . . . ." (*Ibid.*)

Hamilton bases his right to obtain the tape recording of the closed session on section 54957.2. The town acknowledges section 54957.2, but defends against disclosure on the basis of section 87100 of the Political Reform Act.

## The Political Reform Act

The Political Reform Act (PRA), section 81000 et seq., was enacted by initiative in 1974. One of the main purposes of the PRA was to ensure impartial decisionmaking by public officials. (§§ 81001, 81002; *Commission on Cal. State Gov. Org. & Econ.* v. *Fair Political Practices Com.* (1977) 75 Cal.App.3d 716, 718 [142 Cal.Rptr. 468].) The PRA specifically prohibits a public official from making, participating in making, or in any way attempting to use his official position to influence a governmental decision in which he has a financial interest. (§ 87100.) A public official has a financial interest if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official or on any source of income aggregating $250 or more received by the official within the 12-month period preceding the governmental decision. (§ 87103, subd. (c).)

---

[3] This exception was previously recognized in *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41 [69 Cal.Rptr. 480] and later in *Hays* v. *Wood* (1979) 25 Cal.3d 772, 784 [160 Cal.Rptr. 102, 603 P.2d 19].)

The PRA established the Fair Political Practices Commission and charged it with primary responsibility for administration of the PRA. (§§ 83100, 83111.) The PRA also authorized the FPPC to adopt regulations to carry out the purposes and provisions of the PRA. (§ 83112; *Downey Cares v. Downey Community Development Com.* (1987) 196 Cal.App.3d 983, 988 [242 Cal.Rptr. 272].)

 Hamilton concedes that he has a financial conflict of interest under the PRA, section 87103, subdivision (c).[4] Therefore, he was disqualified by section 87100 from making, participating in making, or in any way attempting to use his official influence on decisions concerning the parking assessment district.

Hamilton argues, however, that section 87100 prevents him only from actively participating in governmental decisions in which he has a conflict of interest. He urges us to accept that his silent observation of a closed council session, or his later access to a recording of that session, in no way constitutes participation within the meaning of section 87100. We have found no authority that directly addresses this point.

Section 87100 does not define the terms relating to participation in the governmental decision. Nor do we find such definitions elsewhere within the PRA. The FPPC, however, has adopted regulations defining these phrases: "make a governmental decision" (Cal. Code Regs., tit. 2, § 18700, subd. (b)), "participates in the making of a governmental decision" (*id.* at § 18700, subd. (c)), and "attempting to use his or her official position to influence" (*id.* at § 18700.1, subd. (a)). The regulations do not state that the mere presence of a disqualified official at a closed session, or his later access to a recording of that session, is prohibited. Indeed, the regulations appear to prohibit only more active participation in the governmental decision, for example, voting on a matter, advising or making recommendations to the decision maker, or, for the purpose of influencing the decision, appearing before or contacting the decision maker. (See Cal. Code Regs., tit. 2, §§ 18700, 18700.1.)[5]

Nonetheless, one FPPC opinion suggests that a disqualified official should not even be present at a hearing in which the official has a conflict of

---

[4] At various places in his briefs, Hamilton appears to waffle about this concession. Regardless, we find the requisite financial interest. Hamilton admitted that during the 12 months before the June 1987 closed session, he did more than $250 in business with a person on whom the formation of the parking district would have a material financial effect.

[5] These regulations are subject to our review, as we hold final responsibility for interpreting the statute. (*Morris v. Williams* (1967) 67 Cal.2d 733, 737, 748-749 [63 Cal.Rptr. 689, 433 P.2d 697].)

interest. In *Matter of Hudson* (1978) 4 FPPC Opinions 13, a board of review consisted of five members. Three members constituted a quorum. A decision by the board required a majority of the quorum. Three of the five board members had a financial conflict of interest under section 87103, subdivision (c), with regard to a certain hearing. Under section 87100, the three interested officials were disqualified from participating in the hearing. That left the board with too few members to act. In such situations, the PRA permits a "disqualified" official to participate "to the extent his participation is legally required for the action or decision to be made." (§ 87101.) The issue before the FPPC was whether the participation of the three disqualified board members was "legally required" within the meaning of section 87101.

The FPPC determined that only one disqualified member should be permitted to participate in the hearing. With only one disqualified member, a quorum could be achieved. Any decision would then be reached by a "[b]oard that consists of two members without a financial interest in the decision and only one member with such an interest." The FPPC found that this approach posed less danger of a biased decision and that the purposes of the PRA were best served by a rule that minimizes participation in government decisions by officials with a conflict of interest. (4 FPPC at p. 17.)

The FPPC opinion did not use the word "presence" in its discussion of the disqualified members' participation. Nevertheless, we can infer that the FPPC limitation on participation was in reality a limitation on the other two disqualified officials' presence. The decision speaks of quorums of three: if the other two disqualified officials had also been present, the "quorum" would have been the full five-member board. Thus, it is implicit that the two disqualified members were not to be present at the hearing.

The Attorney General considered a question similar to the *Hudson* issue and specifically concluded that under section 87101's "rule of necessity," only one of three disqualified public officials could be present at a hearing in which they had a conflict of interest. (61 Ops.Cal.Atty.Gen. 243 (1978).) There, three of five members of a city council had a conflict of interest in a matter relating to a redevelopment project. The council needed three members to be present to act as a redevelopment agency. The Attorney General reviewed the law concerning action by collective bodies, which provides that a majority of a quorum can do any act which a majority of the board if present could do. (*Id.* at p. 252, citing *Martin* v. *Ballinger* (1938) 25 Cal.App.2d 435 [77 P.2d 888].) The Attorney General also considered two competing public policies: the right of the public to unbiased public decisionmaking and the right of the public to be actively represented by their duly elected public officials. Finally, the Attorney General cited the *Hudson*

opinion by the FPPC. The Attorney General concluded that, to limit the possibility of a biased public decision about the redevelopment area, the council should permit only one financially interested council member to be present at such decisions. Moreover, that council member would be present only to constitute a quorum. He should not actually vote on the issue, as the remaining two disinterested council members' votes would be sufficient to sustain the action of the agency.

█ Neither the opinion of the Attorney General nor the opinion of the FPPC is binding on us. (58 Cal.Jur 3d, Statutes, § 170, pp. 578-579; *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 66-67 [141 Cal.Rptr. 146, 569 P.2d 740].) █ Nevertheless, we find the foregoing opinions persuasive in this case. The whole purpose of the PRA was "to preclude a government official from participating in decisions where it appears he may not be totally objective because the outcome will likely benefit a corporation or individual by whom he is employed." (*Witt* v. *Morrow* (1977) 70 Cal.App.3d 817, 822-823 [139 Cal.Rptr. 161].) "It is not just actual improprieties which the law seeks to forestall but also the appearance of possible improprieties." (*Id.* at p. 823.)

Despite Hamilton's insistence that nothing improper could come of his silent observation of the closed session, or his later acquisition of the tape, we are concerned with how this might look to the public. To permit a financially interested council member to be privy, unnecessarily, to confidential information which might affect his business interests gives the appearance of impropriety. In our society, information is power. The council member might use the confidential information to his advantage personally, or he might disclose the information improperly to others interested in the decision.[6] Furthermore, the disqualified member's mere presence, or knowledge thereafter, might also subtly influence the decisions of other council members who must maintain an ongoing relationship with him.

We acknowledge Hamilton's point that dissent is a necessary part of our political system, and that the public has a right to be kept informed concerning public matters. In this instance, however, we believe that the policy of promoting unbiased governmental decisions outweighs the public's right to know or to have all of its representatives be fully informed or actively participate in all governmental decisions. The Legislature has already determined that public officials can in certain circumstances be excluded from governmental decisions, and that the public can be denied access to certain council discussions. Hamilton's presence was not necessary to the council discussion, and we feel the best path is to deny him access to the tape.

---

[6] We in no way mean to imply that Council Member Hamilton would actually so use the information. Again, we are dealing with public perceptions and not actual conduct.

In this particular case, our conclusion is based in large part on the fact that the reason for the closed session was to have the town council confer with legal counsel about the parking issues. As noted in *Sutter Sensible Planning, Inc.* v. *Board of Supervisors, supra,* 122 Cal.App.3d 813, 824, "there is a public entitlement to the effective aid of legal counsel in civil litigation." Moreover, "[A]n attorney who cannot confer with his client outside his opponent's presence may be under insurmountable handicaps." (*Ibid.*) In the case where a council member is disqualified from participation in a decision because of a financial conflict of interest, it does not appear to be in the best interest of the town to have that council member present at discussions between the council and its attorney concerning that decision. The attorney, as well as the other council members, might not feel as free to disclose everything necessary when a "biased" public official were present. The council members and attorney might feel similarly inhibited where they are aware that a "biased" council member can later obtain a tape recording of the attorney-council discussion. The town might thus be denied effective assistance of counsel.

In these circumstances, we believe the policy and rule against participation by a council member with a conflict should be construed to prohibit the council member from obtaining a tape recording of a closed session between the council and its attorney, where the council met to discuss litigation related to the disqualified council member's area of conflict. ■■■■ ■ We therefore conclude that Hamilton was properly denied access to the tape under section 87100.[7]

We do not decide whether a council member could compel disclosure of the tape of a closed session where the council member was later required by the rule of necessity to vote on matters discussed in the closed session. Although Hamilton has implied that this happened in his case, he did not present such evidence to the superior court or adequately brief this issue. Hamilton sought to obtain the tape long before he was allegedly required to vote on the parking assessment district. He states that in March and May

---

[7] We do not agree with the Town of Los Gatos that the attorney-client privilege would exclude Hamilton from gaining access to the tape, even apart from section 87100. We believe that Hamilton's status as a council member would normally make him eligible to participate in any discussions between the town attorney and the town council. As a council member, he and the other council members effectively act as the clients of the town attorney with regard to town business. (See *Ward* v. *Superior Court* (1977) 70 Cal.App.3d 23, 32 [138 Cal.Rptr. 532].) If we had concluded that section 87100 did not bar Council Member Hamilton from obtaining the tape despite his disqualification from active participation in the closed session, the attorney-client privilege would offer the town no further protection from disclosure. Hamilton would have had the right to be a silent spectator at the closed session, or to obtain the tape, simply by virtue of his membership on the council. The attorney-client privilege would not have come into play, as Hamilton would have stood, not in the shoes of the general public, but in the shoes of a full council member/"client."

1988 he had to vote on the adoption of a zoning ordinance and that "the ordinance bears directly on the parking assessment district and *apparently* on the litigation which was the subject of the closed session." (Italics added.) We are not persuaded that Hamilton should have access to the tape. In the absence of a demonstrated "need-to-know," the policy against biased public decisionmaking outweighs the policy favoring full disclosure.

Accordingly, we affirm the denial of the writ of mandate.

Premo, J., and Elia, J., concurred.