TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 93-212 |
| of | : | |
| | : | December 30, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE ROBERT PRESLEY, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a city adopt an ordinance making it a misdemeanor for any person present during a duly conducted closed session of a city council meeting to publicly disclose the substance of any discussion properly held during the session unless so authorized by the council?

CONCLUSION

A city may not adopt an ordinance making it a misdemeanor for any person present during a duly conducted closed session of a city council meeting to publicly disclose the substance of any discussion properly held during the session unless so authorized by the council.

ANALYSIS

The Ralph M. Brown Act (Gov. Code, §§ 54950 - 54962; "Act")[1] requires the "legislative bodies" of "local agencies" to hold their meetings open to the public unless expressly excepted by the Act or impliedly excepted by another provision of law pertaining to confidential communications (§ 54962; see 70 Ops.Cal.Atty.Gen. 57, 58 (1987); 63 Ops.Cal.Atty.Gen. 820, 821 (1980)).

The Act contains numerous provisions authorizing the holding of closed sessions. (See *Hamilton* v. *Town of Los Gatos* (1989) 213 Cal.App.3d 1050, 1055; *Register of Division of Freedom Newspapers, Inc.* v. *County of Orange* (1984) 158 Cal.App.3d 893, 907; *Sacramento Newspaper Guild* v. *Sacramento County Board of Supervisors* (1968) 263 Cal.App.2d 41, 45; 51 Ops.Cal.Atty.Gen. 201, 202 (1968).) A closed session may be conducted to discuss and determine

---

[1]All unidentified section references hereafter are to the Government Code.

whether an applicant for a license or license renewal who has a criminal record is sufficiently rehabilitated (§ 54956.7); to instruct the local agency's negotiator regarding the price and terms of payment for a prospective purchase, sale, exchange, or lease of real property (§ 54956.8); to confer with, or receive advice from, the local agency's legal counsel regarding pending litigation (§ 54956.9); to convene with the Attorney General, district attorney, sheriff, or chief of police, or their deputies, on matters posing a threat to the security of public buildings, or a threat to the public's right of access to public services or facilities (§ 54957); to consider the appointment, employment, evaluation of performance, or dismissal of a public employee, or to hear complaints or charges brought against such employee by another, unless a public hearing is requested by the employee (§ 54957); to instruct the local agency's designated representative regarding the salaries, salary schedules, or benefits of its represented or unrepresented employees (§ 54957.6).

The public policy reasons for authorizing closed sessions for public body deliberations appear almost as numerous as the individual exemptions contained in the Act itself. (See, e.g., *Hamilton* v. *Town of Los Gatos, supra,* 213 Cal.App.3d at 1058-1059; *Sacramento Newspaper Guild* v. *Sacramento County Board of Supervisors, supra,* 263 Cal.App.2d at 53-58; *City Council* v. *Superior Court* (1962) 204 Cal.App.2d 68, 75-77; 58 Ops.Cal.Atty.Gen. 273, 277-278 (1975); 51 Ops.Cal.Atty.Gen., *supra*, 205-206.)

The inquiry presented for analysis concerns whether a city may adopt an ordinance making it a misdemeanor for any person present during a duly conducted closed session of a city council meeting to publicly disclose the substance of any discussion properly held during the session unless so authorized by the council. We conclude in the negative.

Preliminarily, we note that the issue in question pertains solely to the authority of a city to make a *crime* of disclosing information under the circumstances presented. We have, in contrast, routinely observed that it would be *improper* for information received during a closed session to be publicly disclosed without authorization of the governing body as a whole. (51 Ops.Cal.Atty.Gen., *supra*, 203-206; 44 Ops.Cal.Atty.
Gen. 147, 149 (1964); Cal. Atty. Gen., Indexed Letter, No. IL 76-201 (Oct. 20, 1976); Open Meeting Laws (Cal. Atty. Gen., pamp., 1989), p. 45; see also *City Council* v. *Superior Court, supra*, 204 Cal.App.2d at 76-77.)

The basis for our prior conclusions was that the statutes authorizing closed sessions and making records thereof "confidential" would be rendered meaningless if an individual member could publicly disclose the information he or she received in confidence. (51 Ops.Cal.Atty.Gen., *supra*, 203-206; Cal. Atty. Gen., Indexed Letter, No. IL 76-201, *supra*.) Not only does the Act authorize closed sessions, it specifies that the minute book containing "a record of topics discussed and decisions made at" a closed session "is not a public record . . . and shall be kept confidential" and "available only to members of the legislative body or . . . to a court . . . ." (§ 54957.2; see *Hamilton* v. *Town of Los Gatos, supra,* 213 Cal.App.3d at 1055; *Register Division of Freedom Newspapers, Inc.* v. *County of Orange, supra,* 158 Cal.App.3d at 907.) If the recording of a closed session discussion must be kept in confidence, it follows that oral communications of such information may not be made to the public.[2]

---

[2]The Act also requires that "[p]rior to or after holding any closed session, the legislative body of the local agency shall state the general reason or reasons for the closed session," but the legislative body is not authorized to give "other information which would . . . unnecessarily divulge the particular facts concerning the closed session." (§ 54957.7.)

Limited by the terms of the question, we do not focus again upon the "propriety" of public disclosures of closed session information. Nor do we examine other possible sanctions that may be imposed upon a person who discloses confidential information, such as barring the person from future closed sessions (see *Hamilton* v. *Town of Los Gatos, supra,* 213 Cal.App.3d at 1054), obtaining an injunction against the person's public disclosures (see § 54960; *Sacramento Newspaper Guild* v. *Sacramento County Board of Supervisors, supra,* 263 Cal.App.2d at 46; *City Council* v. *Superior Court, supra,* 204 Cal.App.2d at 73),[3] or filing an accusation against the person for "willful or corrupt misconduct in office" (§ 3060; see *People* v. *Tice* (1956) 146 Cal.App.2d 750, 754).

Turning, then, to the issue of a city's authority to specify certain conduct as a crime,[4] we commence our analysis with the observation that a city possesses and can exercise only such powers as are granted it by the Constitution or by statutes, together with those powers as arise by necessary implication from those expressly granted. (*Myers v. City Council of Pismo Beach* (1966) 241 Cal.App.2d 237, 240; 66 Ops.Cal.Atty.Gen. 293, 296 (1983).) Specifically, a "county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7; § 37100.) Under the police power, cities and counties have plenary power to govern, subject only to the limitation that they exercise this authority within their territorial limits and subordinate to state law. Otherwise, the police power of a city or county is as broad as that of the Legislature itself. (*Candid Enterprises, Inc.* v. *Grossmont Union High School District* (1985) 39 Cal.3d 878, 885; *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140.)

If an ordinance of a general law city conflicts with state law, it is void under the limited grant of constitutional authority. (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807.) The conflicting ordinance of a charter city would also be void, unless it concerns a purely "municipal affair." (Cal. Const. art. XI, § 5; 66 Ops.Cal.Atty.Gen. 293, 297 (1983); see also 62 Ops.Cal.Atty.Gen. 448, 451 (1979).) Inasmuch as the Act's provisions are a matter of statewide concern and do not involve a purely municipal affair, the ordinance in question would be invalid if it is in conflict with state law, whether the ordinance be that of a general law or charter city. (See *San Diego Union* v. *City Council of the City of San Diego* (1983) 146 Cal.App.3d 947, 957-958.)

In *Lancaster* v. *Municipal court* (1972) 6 Cal.3d 805, 807-808, the court explained when a "conflict" exists for purposes of the constitutional provision: "Conflicts exist if the ordinance duplicates [citations], contradicts [citation] or enters an area fully occupied by general law, either expressly or by legislative implication [citations]."

In determining whether the Legislature has "fully occupied" a particular area of law by implication, the whole purpose and scope of the legislative scheme must be considered. There are three tests: (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been

---

[3]The disobedience of a lawful judgment or order of a court constitutes a contempt (Code Civ. Proc., § 1209, subd. (a)(5)), punishable by a fine of up to $1000, imprisonment not exceeding five days, or both (Code Civ. Proc., § 1218).

[4]A discussion of any possible First Amendment rights (U.S. Const., 1st Amend. ["Congress shall make no law . . . abridging the freedom of speech . . ."]; Cal. Const., art. I, § 2, subd. (a) [. . . "A law may not restrain or abridge liberty of speech . . ."]) to publicly disclose the information in question is beyond the scope of this opinion.

partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality. (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 708; *People* ex rel. *Deukmejian v. County of Mendocino, supra*, 36 Cal.3d at 485; *In re Hubbard* (1964) 62 Cal.2d 119, 128.) When the state has occupied a particular field, not even "complementary" or "supplementary" local legislation is permitted. (See *In re Lane* (1962) 58 Cal.2d 99, 102; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681.)

The Act specifically provides that a "member of a legislative body who attends a meeting of a legislative body where action is taken in violation of any provision of [the Act], with knowledge of the fact that the meeting is in violation thereof, is guilty of a misdemeanor." (§ 54959.) It has also been held that the Act may be enforced by use of the general criminal sanction set forth in section 1222. (*Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 774-775.) Section 1222 provides:

> "Every willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor."

In view of these specific and general criminal sanctions enacted by the Legislature, we believe that a local misdemeanor ordinance to further enforce the Act's provisions would be in conflict with state legislation either by duplicating it or being supplemental thereto in an area fully occupied by the Legislature. Such an ordinance would thus be preempted by state law and deemed void.

In answer to the question presented, therefore, we conclude that a city may not adopt an ordinance making it a misdemeanor for any person present during a duly conducted closed session of a city council meeting to publicly disclose the substance of any discussion properly held during the session unless so authorized by the council.

\* \* \* \* \*