BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE DEPARTMENT OF FORESTRY AND FIRE PROTECTION has requested an opinion on the following question:
May the Department of Forestry and Fire Protection award a financial grant to a timber owner for planning, reforestation, and resource management if the timber owner is a state employee?
 CONCLUSION
The Department of Forestry and Fire Protection may award a financial grant to a timber owner for planning, reforestation, and resource management even though the timber owner is a state employee as long as his or her duties as an employee do not relate to or affect the awarding of such grants.
 ANALYSIS
We are informed that a landowner has applied to the Department of Forestry and Fire Protection ("Department") for a financial grant under the California Forest Improvement Program (Pub. Resources Code, §§ 4790-4799.04; Cal. Code Regs., tit. 14, §§14:1525-14:1545.9; "CFIP"). The grant would help pay for forest improvements, including tree planting and tree thinning, on 120 acres of timberland in Northern California. We are asked whether the Department may provide the requested financial assistance in light of the fact that the landowner is a state employee. Under the circumstances presented, we conclude that the Department may award the grant to the state employee.
The CFIP provides eligible landowners with technical and financial assistance for planning, reforestation, and resource management. A grant may fund up to 90 percent of a project's costs. (Pub. Resources Code, §§ 4794-4795.) To be eligible for financial assistance, an applicant must meet specified acreage and zoning requirements. (Pub. Resources Code, §§ 4794, 4797,4799.) Once an application is approved, the Department and the applicant execute an agreement whereby the landowner agrees to perform the project as proposed in return for the CFIP financial assistance.
Here, the landowner who has applied to the Department for a CFIP grant is a state employee, but he has no official involvement with respect to the process of evaluating grant applications or the awarding of CFIP grants. He is not employed by the Department, and none of his work as a state employee affects the Department. He is submitting his application solely in his capacity as a landowner, and he has no other interest in or connection to the grant proposal.
With these facts in mind, we first consider the provisions of the Political Reform Act of 1974 (Gov. Code, §§ 81000-91014; "Act"),[1] which generally prohibit public officials from participating in government decisions in which they have a financial interest. (See 78 Ops.Cal.Atty.Gen. 362, 368-374 (1995); 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).) Section 87100 states:
"No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."
Under our facts, the state employee in question[2] has no official involvement in, or opportunity to influence, the Department's decision whether to award the financial grant. While he would have a financial interest in the grant, he would not be using his official position to make, to participate in making, or to influence the awarding of the grant by the Department. Hence, providing a grant to this employee would be outside the scope of section 87100. (Cf. Witt v. Morrow (1977) 70 Cal.App.3d 817,822-823 [whole purpose of Act is to "preclude a government official from participating in decisions" where[3] objectivity may be compromised by personal interest].)
We next turn to the conflict of interest prohibition found in section 1090, which provides in relevant part:
"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."[4]
The purpose of this prohibition "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct . . . ." (Stigall v. City of Taft (1962)58 Cal.2d 565, 569.) Section 1090 is intended "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (City of Imperial Beach v. Bailey (1980)103 Cal.App.3d 191, 197; see 86 Ops.Cal.Atty.Gen., supra, at p. 144.) A contract executed in violation of section 1090 is void and unenforceable. (See Thomson v. Call (1985) 38 Cal.3d 633, 649; Stigall v. City of Taft, supra, 58 Cal.2d at pp. 570-571.)
The phrase "any contract made by them" contained in section 1090 has been broadly defined to include various official activities leading up to execution of the contract, including preliminary discussions, negotiations, compromises, reasoning, and planning. (See Stigall v. City of Taft, supra, 58 Cal.2d at pp. 569-571; City Council v. McKinley (1978) 80 Cal.App.3d 204,212-213; People v. Sobel (1974) 40 Cal.App.3d 1046, 1052; Millbrae Assn. for Residential Survival v. City of Millbrae (1968) 262 Cal.App.2d 222, 237; Schaefer v. Berinstein (1956)140 Cal.App.2d 278, 291-292; 86 Ops.Cal.Atty.Gen., supra, at p. 145, n. 3; 85 Ops.Cal.Atty.Gen. 34 (2002); 80 Ops.Cal.Atty.Gen. 41, 42-44 (1997).)
We are given that the applicant, although a state employee, has no involvement whatsoever "in [his] official capacity" in the awarding of the grant by the Department. His sole involvement is as a private landowner seeking financial assistance for timberland improvements consistent with the statutory objectives. Accordingly, section 1090's prohibition is inapplicable for the same reasons that the Act's conflict of interest provisions are inapplicable.
Similarly, we find that a grant by the Department to this state employee would not violate general common law principles under which public officers are required to avoid placing themselves in positions in which their personal interests conflict with their duties to the public. As explained in Noble v. City of Palo Alto (1928) 89 Cal.App. 47, 51: "A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public. [Citations.]" Under the doctrine, "[p]ublic officers are obligated, . . . [by virtue of their office], to discharge their responsibilities with integrity and fidelity." (Terry v. Bender (1956) 143 Cal.App.2d 198, 206.)
In the present situation, we find no common law conflict because, once again, the state employee has no official powers, duties, or responsibilities at all with respect to the proposed grant or to the Department. His financial interest in receiving a CFIP grant will not conflict with, undermine, influence, or touch upon the performance of his duties as an employee of the state. (Cf. BreakZone Billiards v. City of Torrance (2000)81 Cal.App.4th 1205, 1232-1233.)
Finally, we examine the terms of Public Contract Code section10410, which applies expressly to state employees:
"No officer or employee in the state civil service or other appointed state official shall engage in any employment, activity, or enterprise from which the officer or employee receives compensation or in which the officer or employee has a financial interest and which is sponsored or funded, or sponsored and funded, by any state agency or department through or by a state contract unless the employment, activity, or enterprise is required as a condition of the officer's or employee's regular state employment. No officer or employee in the state civil service shall contract on his or her own individual behalf as an independent contractor with any state agency to provide services or goods." (Italics added.)
Under this statute, we must determine (1) whether a CFIP financial grant is a "state contract" and (2) whether the state employee would be acting as an "independent contractor" in supplying "goods or services."[5]
In construing this statutory language, we may rely upon well established principles of statutory interpretation. "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]" (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000.) " `In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning.' " (Curle v. Superior Court (2001) 24 Cal.4th 1057, 1063.) Portions of a statute are to be read in the context of the entire statute, harmonizing the provisions and giving significance to every word, phrase, and sentence in pursuance of the legislative purpose. (See California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634; DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 388; Woods v. Young (1991) 53 Cal.3d 315,323.) Finally, a statute is to be read "in light of the evils which prompted its enactment and the method of control which the Legislature chose. [Citation.]" (People v. Vega (1995)33 Cal.App.4th 706, 709-710; see People ex rel. S. F. Bay etc. Com. v. Town of Emeryville (1968) 69 Cal.2d 533, 543.)
Here, the surrounding statutory framework is of particular significance in understanding the scope and meaning of Public Contract Code section 10410. The statute was enacted in 1983 (Stats. 1983, ch. 1231, § 4) as a part of legislation entitled "State Procurement of Materials, Supplies, Equipment, and Services." This chapter in the Public Contract Code currently bears the heading: "State Acquisition of Goods and Services." (See Stats. 2000, ch. 776, § 4.) It is evident that the "state contracts" with which this chapter (Pub. Contract Code, §§ 10290-10474) is concerned — and to which Public Contract Code section 10410 refers — are contracts through which state agencies procure "goods and services."[6] Such contracts are defined generally in Public Contract Code section 10295, subdivision (a):
"All contracts entered into by any state agency for (1) the acquisition of goods or elementary school textbooks, (2) services, whether or not the services involve the furnishing or use of goods or are performed by an independent contractor, (3) the construction, alteration, improvement, repair, or maintenance of property, real or personal, or (4) the performance of work or services by the state agency for or in cooperation with any person, or public body, are void unless and until approved by the [Department of General Services]. Every contract shall be transmitted with all papers, estimates, and recommendations concerning it to the department and, if approved by the department, shall be effective from the date of the approval."
In prior opinions, we have examined the scope of Public Contract Code section 10295 and its predecessor. On each occasion, we have concluded that the "contracts" covered by this statutory scheme do not include an agency's awarding of grants to promote or underwrite projects in the public interest — even if, as here, the grants are made pursuant to an executed agreement between a state agency and the grantee. (See 74 Ops.Cal.Atty.Gen. 10 (1991); 63 Ops.Cal.Atty.Gen. 290 (1980); 58 Ops.Cal.Atty.Gen. 586, supra.) The statute's pertinent provisions have not materially changed since we rendered our prior opinions, and we reach the same conclusion here.
Nothing in the CFIP grant program itself or the grant documents under consideration requires a different result. A CFIP grant provides a landowner with financial assistance to complete a forest improvement project that serves the public interest. (Pub. Resources Code, § 4790, subd. (j).) The conditions imposed upon CFIP grant recipients (see Cal. Code Regs., tit. 14, §§ 14:1536
[grantee must submit project completion report]; 1536.1 [on-site inspections]) serve primarily to ensure that all grant funds will be properly spent and that the projects will be duly monitored and completed. (See 74 Ops.Cal.Atty.Gen., supra, at p. 151; 58 Ops.Cal.Atty.Gen., supra, at pp. 590-591.)
Simply put, we find that CFIP grants are not "procurement contracts" through which a state agency acquires goods or services, but are instead awards of assistance to others — in this case, to qualifying owners of private timberland — to support projects undertaken by the grantees in the public interest. (Pub. Resources Code, §§ 4790, 4791.)[7] As such, the grants fall outside the purview of Public Contract Code section 10410. (Cf. 74 Ops.Cal.Atty.Gen., supra, at p. 15; 63 Ops.Cal.Atty.Gen., supra, at p. 292; 58 Ops.Cal.Atty.Gen., supra, at p. 591.)
We conclude that the Department may award a financial grant to a timber owner for planning, reforestation, and resource management even though the timber owner is a state employee as long as his or her duties as an employee do not relate to or affect the awarding of such grants.
[1] All references hereafter to the Government Code are by section number only.
[2] Section 82048 defines "public official" as "every member, officer, employee or consultant of a state or local government agency. . . ."
[3] When a disqualifying conflict of interest is found to exist under the Act, the interested public official is required to recuse himself or herself from every aspect of the decision-making process and may be required to give public notice of the conflict. (§§ 87100, 87105; Cal. Code Regs., tit. 2, §§2:18700, 2:18702.1; see Hamilton v. Town of Los Gatos (1989)213 Cal.App.3d 1050, 1058-1059; 86 Ops.Cal.Atty.Gen. 142, 143 (2003); 61 Ops.Cal.Atty.Gen. 243, 250-255 (1978).) Here, because the applicant is not involved in any aspect of the decision-making process, there is no activity, discussion, or vote from which he could recuse himself — a fact that underscores our conclusion that the Act's provisions are inapplicable under the circumstances presented. (Cf. Cal. Code Regs., tit. 2, §§ 2:18702.1,2:18702.2.)
[4] Sections 1091 and 1091.5 describe certain interests in contracts as "remote interests" and "noninterests" that fall outside the strict prohibition of section 1090. (See, e.g., 85 Ops.Cal.Atty.Gen., supra, at pp. 36-38.) In the circumstances presented, these statutory exceptions are not germane to our discussion.
[5] In 84 Ops.Cal.Atty.Gen. 131 (2001), we considered the requirements of Public Contract Code section 10410 where a state employee's spouse provided goods and services to the employee's own department. We concluded that the statute "is directed at the contractual activities of state officers and employees, not their spouses," and that the contract was permissible "if the employee neither participates in the department's decision to enter into the contract nor participates in the spouse's business." (Id. at p. 134.) We have not applied the statute in other contexts. (See 80 Ops.Cal.Atty.Gen. 41, 45, fn. 4 (1997).)
[6] "[I]t is well established that `"chapter and section headings [of an act] may properly be considered in determining legislative intent" [citation], and are entitled to considerable weight. [Citation.]' [Citations.]" (People v. Hull (1991)1 Cal.4th 266, 272.)
[7] Similarly, state funded college scholarships, state issuance of special parking privileges to disabled drivers, state park entrance fee discounts for senior citizens, state recycling incentives, and various other state sponsored subsidies and incentive programs would not be subject to the requirements of Public Contract Code section 10295. Plainly, a recipient's "compliance" with the conditions of such awards — by maintaining a particular college grade-point average, for example, or being disabled, or being a senior citizen, or recycling designated materials — is not equivalent to supplying the state with "goods or services." (Cf. Pub. Resources Code, § 4790.5.)