BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE GEORGE A. PLESCIA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following questions:
With respect to two affiliated limited partnerships, one of which has entered into a series of contracts with a hospital district to provide an ambulatory surgery center and the other leases land to the surgery center, and the district is the general partner in both partnerships and a limited partner in the surgery center partnership, and the individual retirement account of a newly elected district director's spouse holds a limited partnership interest in both affiliated partnerships,
1. May the hospital district enter into additional contracts with the affiliated partnerships, or renew existing ones, where (1) the limited partnership interests held in the spouse's individual retirement account represent less than 3 percent of the affiliated partnership interests, (2) the total distributions and other income from the affiliated partnerships do not exceed 5 percent of the total annual income of the director and her spouse, and (3) the district, as the general partner in both affiliated partnerships, determines the amount of cash distributed by the partnerships?
2. May the interests in the affiliated partnerships held in the individual retirement account be transferred to a third party pursuant to procedures specified in the partnership agreements which allow the district, as a limited partner in the surgery center partnership, to exercise a right of first refusal to purchase affiliated partnership interests?
3. May the trustee of the individual retirement account exercise a "put option" right as provided in the partnership agreements which requires the district, as the general partner in both affiliated partnerships, to purchase partnership interests at fair market value?
 CONCLUSIONS
With respect to two affiliated limited partnerships, one of which has entered into a series of contracts with a hospital district to provide an ambulatory surgery center and the other leases land to the surgery center, and the district is the general partner in both affiliated partnerships and a limited partner in the surgery center partnership, and the individual retirement account of a newly elected district director's spouse holds a limited partnership interest in both affiliated partnerships,
1. The hospital district may not enter into additional contracts with the affiliated partnerships, or renew existing ones, where (1) the limited partnership interests held in the spouse's individual retirement account represent less than 3 percent of the affiliated partnership interests, (2) the total distributions and other income from the affiliated partnerships do not exceed 5 percent of the total annual income of the district director and her spouse, and (3) the district, as the general partner in both affiliated partnerships, determines the amount of cash distributed by the partnerships.
2. The interests in the affiliated partnerships held in the individual retirement account may be transferred to a third party pursuant to procedures specified in the partnership agreements which allow the district, as a limited partner in the surgery center partnership, to exercise a right of first refusal to purchase affiliated partnership interests, provided that the district does not exercise its right to purchase.
3. The trustee of the individual retirement account may not exercise a "put option" right as provided in the partnership agreements which requires the district, as the general partner in both affiliated partnerships, to purchase partnership interests at fair market value.
 ANALYSIS
We are informed that a hospital district[1] has contractual agreements with two affiliated limited partnerships. One partnership ("Surgery Center Partnership") provides the district with an ambulatory surgery center. The second partnership ("Land Leasing Partnership") leases land to the Surgery Center Partnership. The district is the general partner in both partnerships and is a limited partner in the Surgery Center Partnership.
We are further informed that the spouse of a newly elected district director has an individual retirement account ("IRA")[2] that holds a limited partnership interest in both affiliated partnerships. These interests represent less than 3 percent of the affiliated partnerships interests, whether they are considered separately or in combination, and the total distributions and other income from the affiliated partnerships do not exceed 5 percent of the total annual income of the district director and her spouse.
We are asked three questions concerning the foregoing contractual arrangements. The questions involve the possible applicability of Government Code section 1090[3] in light of the partnership interests held in the IRA by the spouse of the newly elected district director. Section 1090 provides in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
Before addressing the questions individually, we note that a director of a hospital district is covered by section 1090's prohibition. (See Eldridge v. Sierra View Local HospitalDistrict (1990) 224 Cal.App.3d 311, 320; 87 Ops.Cal.Atty.Gen.,supra, at p. 93; 75 Ops.Cal.Atty.Gen. 20, 23 (1992).)[4]
The statute is concerned with financial interests, other than certain remote or minimal interests, that prevent public officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their agencies. (See Stigall v. City of Taft (1962) 58 Cal.2d 565, 569; Peoplev. Honig (1996) 48 Cal.App.4th 289, 333.) Section 1090 is intended "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (City of ImperialBeach v. Bailey (1980) 103 Cal.App.3d 191, 197.) If a public official is a member of a board that executes the contract in question, he or she is conclusively presumed to be involved in the making of the contract. (Thomson v. Call (1985)38 Cal.3d 633, 645, 649.) When section 1090 is applicable to one member of the governing body of a public entity, the prohibition cannot be avoided by having the interested board member abstain; the entire governing body is precluded from entering into the contract. (Thomson v. Call, supra, at pp. 647-649; Stigall v. City ofTaft, supra, 58 Cal.2d at p. 569; City of Imperial Beach v.Bailey, supra, 103 Cal.App.3d at p. 197; 86 Ops.Cal.Atty.Gen. 138, 139 (2003); 70 Ops.Cal.Atty.Gen. 45, 48 (1987).) A contract that violates section 1090 is void. (Thomson v. Call, supra,
38 Cal.3d at p. 646.) The prohibition applies regardless of whether the terms of the contract are fair and equitable to all parties. (Id. at pp. 646-649.)
Prohibited "financial interests" extend to expectations of economic benefit (People v. Honig, supra, 48 Cal.App.4th at p. 315); "a financial interest within the meaning of section 1090 may be direct or indirect and includes the contingent possibility of monetary or proprietary benefits." (Id. at p. 325; seePeople v. Gnass (2002) 101 Cal.App.4th 1271, 1298-1301; Peoplev. Vallerga (1977) 67 Cal App.3d 847, 865; People v. Darby
(1952) 114 Cal.App.2nd 412, 433, fn. 4.) The fact that the officer's interest "might be small or indirect is immaterial so long as it is such as deprives the [district] of his overriding fidelity to it and places him in the compromising situation where, in the exercise of his official judgment or discretion, he may be influenced by personal considerations rather than the public good." (Terry v. Bender (1956) 143 Cal.App.2d 198,207-208.)
Here, the district director would have a financial interest in the contracts between the district and the affiliated partnerships as the result of her spouse's IRA investments in the partnerships. A contract favorable to the affiliated partnerships would enhance their value. (See Fraser-Yamor Agency, Inc. v.County of Del Norte (1977) 68 Cal.App.3d 201, 214-215 [county supervisor has partnership interest in insurance agency; agency's contracts with county contribute to its financial success, which in turn enhances value of supervisor's interest in agency]; 86 Ops.Cal.Atty.Gen., supra, at p. 141 [contract between city council and council member's law firm to perform pro bono work for city could bring indirect economic gain to law firm through publicity from successful litigations, thereby enhancing value of council member's interest in the firm].)
Even though the IRA is held in the name of the spouse alone, the director has a personal financial interest in the IRA, as it may inure to her direct benefit as a designated beneficiary or otherwise contribute to her support. (See Thorpe v. Long BeachCommunity College (2000) 83 Cal.App.4th 655, 659; Reece v.Alcoholic Bev. etc. Appeals Bd. (1976) 64 Cal.App.3d 675, 683;Nielsen v. Richards (1925) 75 Cal.App. 680, 685-687). It has long been held that the financial interest of one spouse will be attributed to both spouses for purposes of section 1090. (85 Ops.Cal.Atty.Gen. 34, 36 (2002); 81 Ops.Cal.Atty.Gen. 169, 171-172 (1998); 78 Ops.Cal.Atty.Gen. 230, 237 (1995); 69 Ops.Cal.Atty.Gen. 102, 106 (1986).)
The district director in question would not only have a financial interest in the district's contracts with the affiliated partnerships, she would also be called upon to approve any changes to those contracts as a member of the district's board of directors. When the contracts at issue were first "made," no prohibited financial interests were present since she was not yet serving on the board. However, after the election, and in the absence of a statutory exception, section 1090 would prohibit the board from entering into any new contracts with the affiliated partnerships. The renegotiation or amendment of an existing contract between the partnerships and the district would constitute the "making" of a contract prohibited by section 1090. (See City of Imperial Beach v. Bailey, supra, 103 Cal.App.3d at pp. 196-197; 85 Ops.Cal.Atty.Gen. 176, 177, fn. 2 (2002); 81 Ops.Cal.Atty.Gen. 274, 278 (1998).).
Finally, we note that the renewal of a contract — even when the renewal involves no renegotiation and when every term of the agreement remains unchanged — constitutes the making of a contract for purposes of section 1090. (See 81 Ops.Cal.Atty.Gen. 134, 137-138 (1998).) Of course, if the district director's spouse may first terminate his IRA's holdings in the affiliated partnerships, the district could then execute new contracts with the partnerships. (See 86 Ops.Cal.Atty.Gen. 187, 191-192 (2003).)
1. "Remote Interests" and "Noninterests"
The first question asks whether the district may enter into additional contracts with the affiliated partnerships, or renew existing ones, where (1) the interests held in the IRA of the district director's spouse represent less than 3 percent of the affiliated partnerships interests, whether the partnerships are considered separately or in combination, (2) the total distributions and other income from the partnerships do not exceed 5 percent of the total annual income of the district director and her spouse, and (3) the district, as the general partner in the affiliated partnerships, determines the amount of cash distributed by the partnerships. Does the presence of these three factors allow the prohibition of section 1090 to be avoided? We conclude that they do not.
The Legislature has excluded certain financial interests from the prohibition of section 1090. Denominated as "remote interests" (§ 1091) and "noninterests" (§ 1091.5), these exceptions apply in specific circumstances. If a "remote interest" is present, as defined in section 1091, the contract may be made if the officer (1) discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer abstains from any participation in the making of the contract. (See 88 Ops.Cal.Atty.Gen. 106, 108 (2005); 87 Ops.Cal.Atty.Gen. 23, 25-26 (2004); 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen., supra, at pp. 235-237; 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a "noninterest" is present, as defined in section 1091.5, the contract may be made without the officer's abstention, and generally a noninterest does not require disclosure. (City of Vernon v. Central Basin Mun. Water Dist.
(1999) 69 Cal.App.4th 508, 514-515; 84 Ops.Cal.Atty.Gen. 158, 159-160 (2001); 83 Ops.Cal.Atty.Gen., supra, at p. 247.)
The only remote interest or noninterest exception that merits discussion is the noninterest exception of subdivision (a)(1) of section 1091.5, which states:
 "An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:
 "(1) The ownership of less than 3 percent of the shares of a corporation for profit, provided that the total annual income to him or her from dividends, including the value of stock dividends, from the corporation does not exceed 5 percent of his or her total annual income, and any other payments made to him or her by the corporation do not exceed 5 percent of his or her total annual income."
The district director's financial interest fits within the percentage restrictions of section 1091.5, subdivision (a)(1), but the interest is in limited partnerships, not in shares of a corporation. May it nonetheless qualify as an exception to section 1090's prohibition?
In analyzing the scope of section 1091.5, we follow well established rules of statutory interpretation. "The words of the statute are the starting point." (Lungren v. Deukmejian (1988)45 Cal.3d 727, 735.) "`If the language is clear and unambiguous there is no need for construction. . . .'" (Wilcox v.Birtwhistle (1999) 21 Cal.4th 973, 977.) "[A] statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation]." (Wells Fargo Bankv. Superior Court (1991) 53 Cal.3d 1082, 1097.) Moreover, statutory exceptions to conflict-of-interest laws are to be strictly construed. (Thorpe v. Long Beach Community CollegeDist., supra, 83 Cal.App.4th at pp. 663-664; 88 Ops.Cal.Atty.Gen. 122, 128 (2005).)
The Legislature has carved out a specific exception to the prohibition of section 1090 for "[t]he ownership of less than 3 percent of the shares of a corporation for profit," where such ownership also meets certain requirements as to "income . . . from dividends, including the value of stock dividends, from thecorporation. . . ." (§ 1091.5, subd.(a)(1), italics added.) No other type of business entity is mentioned in this exception. The doctrine of statutory construction known as expressio unius estexclusio alterius provides that "`the expression of certain things in a statute necessarily involves the exclusion of other things not expressed. . . . [Citation.]" (Dyna-Med, Inc. v. FairEmployment Housing Co. (1987) 43 Cal.3d 1379, 1391, fn. 13.) We reject the suggestion that an interest that has some of the characteristics of one of the noninterests specified in section 1091.5 is legally cognizable an as additional exception to section 1090. In particular, a financial interest that may bequantitatively similar to one of the specified noninterests may not be qualitatively similar.
Here, we note that the district director not only has interests in the two affiliated partnerships through her spouse's IRA investments, she also would be exercising influence over the partnerships through the district's role as general partner in both partnerships. She would therefore participate in determining the amount of cash to be distributed by the partnerships. Recipients of cash distributions by these entities include her spouse's IRA. In these circumstances, her financial interest cannot be considered the equivalent to that of a minor shareholder in a corporation; rather, it is more characteristic of a corporate officer.
We conclude in answer to the first question that the hospital district may not enter into additional contracts with the affiliated partnerships, or renew existing ones, where the limited partnership interests held in the spouse's IRA represent less than 3 percent of the affiliated partnership interests, (2) the total distributions and other income from the affiliated partnerships do not exceed 5 percent of the total annual income of the board member and spouse, and (3) the district as the general partner in the affiliated partnerships, determines the amount of cash distributed by the partnerships.[5]
2. Transfer of Partnership Interests
The second question asks whether the interests in the affiliated partnerships held in the IRA may be transferred to a third party pursuant to procedures specified in the partnership agreements, where the district, as a limited partner in the Surgery Center Partnership, may exercise a right of first refusal to purchase affiliated partnership interests. We conclude that as long as the hospital district is not the one making the purchase, such a transfer would avoid the application of section 1090.
In ordinary circumstances, an official with a proscribed financial interest, whether a partnership interest or some other type of financial interest, may terminate the interest and thereby avoid section 1090's proscription. (81 Ops.Cal.Atty.Gen.,supra, at p. 138; see City of Imperial Beach v. Bailey,supra, 103 Cal.App.3d at p. 197 [city concessionaire had choice between remaining on the city council or continuing her ownership of business concession causing the conflict].) Here, the spouse of the district director could normally direct his IRA trustee to sell his interests in the affiliated partnerships. However, under the partnership agreements, the district would have a right of first refusal. The district director would have a financial interest in the board's decision to buy her spouse's partnership interests. If the district were to exercise its option and enter into a contract with the trustee of the IRA, the board would be involved in the making of a contract in which one of its members would have a prohibited financial interest.
However, if the hospital district were to decline to exercise its right of first refusal, it would not be a party to the sales agreement. That contract would be between the spouse's IRA trustee and a third party. It would be anomalous to conclude that in declining its option to enter into a contract prohibited by section 1090, the board of directors would be "making" another prohibited contract to which it was not a party.
We note that under a separate statutory scheme, the Political Reform Act of 1974 (§§ 81000-91014; "Act"), the district director may have a disqualifying conflict of interest that would prevent her from participating in the board's decision not to exercise its right of first refusal. The Act generally prohibits public officials from participating in "governmental decisions" in which they have a financial interest. (See § 87100; 88 Ops.Cal.Atty.Gen. 32, 33-34 (2005); 78 Ops.Cal.Atty.Gen. 362, 368-374 (1995).) Section 87103 states: "A public official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, a member of his or her immediate family. . . ." As relevant here, the act of decision making includes voting on a matter or obligating one's agency to a course of action on an issue. (Cal. Code Regs., tit. 2, § 18702.1, subd. (a)(1),(3).) A determination not to act in either of those ways is also "making a decision" under the Act. (Cal. Code Regs., tit. 2, § 18702.1, subd. (a)(5).) A financial effect includes increasing or decreasing the personal expenses, income, assets, or liabilities of the official or members of the official's immediate family. (Cal. Code Regs., tit. 2, § 18703.5.) The effect must be at least $250 in a 12-month period in order to be considered "material." (Cal. Code Regs., tit. 2, § 18705.5.) When a disqualifying conflict of interest exists, the Act requires that the disqualified official abstain from participating in every aspect of the decision-making process. (§§ 87100, 87105; Cal. Code Regs., tit. 2, §§ 18700, 18702.1; seeHamilton v. Town of Los Gatos (1989) 213 Cal.App.3d 1050,1058-1059; 86 Ops.Cal.Atty.Gen.142, 143 (2003).)
Accordingly, in answer to the second question, we conclude that the interests in the affiliated partnerships held in the IRA may be transferred to a third party pursuant to procedures specified in the partnership agreements which allow the district, as a limited partner in the surgery center partnership, to exercise a right of first refusal to purchase affiliated partnership interests, provided that the district does not exercise its right to purchase.
3. Exercise of "Put Option" Right
The third question asks whether the trustee of the IRA may exercise a "put option" right[6] as provided in the partnership agreements which requires the district, as the general partner in both affiliated partnerships, to purchase partnership interests at fair market value. As we have demonstrated, the district director has a financial interest in her spouse's IRA holdings. Any purchase of those holdings by the district, whether at fair market value or otherwise, would be a contract subject to the prohibition of section 1090. (See Peopleex rel. State of California v. Drinkhouse (1970)4 Cal.App.3d 931, 934-935).
The fact that the put option right is part of pre-existing partnership agreements does not prevent the prohibition of section 1090 from being applied. Here, we would have a new contract requiring the district to agree to an amount representing fair market value. (Cf. 81 Ops.Cal.Atty.Gen.,supra, at p. 137 [city and partnership cannot contract where general partner sits on city council although pre-existing agreement allows an arbitrator to decide new rental rate or fees].) Even the selection of an appraiser would be a negotiable aspect of the process leading to the contract's execution. The separate buy-out contract between the spouse's IRA trustee and the district would be a violation of section 1090.
Accordingly, in answer to the third question, we conclude that the trustee of the IRA may not exercise a "put option" right as provided in the partnership agreements which requires the district, as the general partner in both affiliated limited partnerships, to purchase partnership interests at fair market value.
[1] Hospital districts and health care districts are governed by The Local Health Care District Law (Health Saf. Code, §§ 32000-32492). They have the power to execute leases of property located both within and outside their territories, as well as to establish, maintain, and operate health care facilities. (Health Saf. Code, § 32121, subds. (c), (j); see 87 Ops.Cal.Atty.Gen. 92, fn.1 (2004)).
[2] An IRA is a tax-advantaged trust or custodial account set up for the exclusive benefit of the owner or his or her beneficiaries. The IRA must have a trustee or custodian, but the owner may direct the trustee or custodian to invest the funds in particular assets. (See U.S. Dept. Treasury, Pub. 590 (2005).) For purposes of this opinion, we may assume that any proposed transfer of an interest by the IRA trustee will be in compliance with all applicable federal rules and regulations.
[3] All section references hereafter are to the Government Code.
[4] Section 1090 is inapplicable to hospital district directors under certain conditions set forth in Health and Safety Code Section 32111. These conditions are not relevant to the present inquiry. (See 87 Ops.Cal.Atty.Gen., supra at p. 93, fn. 3.)
[5] A "rule of necessity" allows execution of a contract in narrowly defined circumstances. (See Eldridge v. Sierra ViewLocal Hospital Dist., supra, 224 Cal.App. at p. 321; 88 Ops.Cal.Atty.Gen., supra, at pp. 110-112; 80 Ops.Cal.Atty.Gen. 335, 338-339 (1997); 65 Ops.Cal.Atty.Gen., supra, at p. 310.) The application of this rule is beyond the scope of this opinion. (See 81 Ops.Cal.Atty.Gen., supra, at p. 174, fn. 3.)
[6] A "put option" right in this context is "the right to require another to buy." (Black's Law Dict. (8th ed. 1999) p. 1128, col. 1.)