[No. H018276. Sixth Dist. Aug. 18, 1999.]

JOSEPH KLEITMAN et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
GARY B. WESLEY, Real Party in Interest.

COUNSEL

Olson, Hagel, Leidigh, Waters & Fishburn, N. Eugene Hill, George Waters; Michael D. Martello; C. Shelley Emerson; and Jannie L. Quinn for Petitioners.

No appearance for Respondent.

Melvin L. Emerich and Gary B. Wesley for Real Party in Interest.

OPINION

ELIA, J.—

## I. INTRODUCTION

This original proceeding raises an issue of first impression under the Ralph M. Brown Act, Government Code section 54950 et seq.[1] (hereafter, Brown Act or Act), concerning the right to discovery of the personal recollections of city council members as to proceedings which took place during an unrecorded closed session of the city council. Petitioners are Joseph Kleitman and other members of the City Council of the City of Mountain View, who seek a writ of mandate directing respondent court to vacate its order compelling them to answer five special interrogatories regarding their personal recollections of an unrecorded closed session held by the city council with respect to the negotiation of a lease of city property.[2] Petitioners contend that the trial court erred because the order requires them to disclose the confidential proceedings of a closed session.

Real party in interest Gary B. Wesley is a resident of Mountain View who brought the underlying action against the city council members, alleging that the closed session violated the Brown Act because the members discussed city property not properly identified by the closed session agenda item description. Wesley contends that these illegal discussions were not confidential under the Brown Act, and, therefore, discovery into the recollections of the city council members regarding the unlawful closed session is proper.

However, the Brown Act does not provide for disclosure of the personal recollections of members of a legislative body with regard to the proceedings held in an unrecorded closed session. Instead, the Act provides only for

---

[1] All statutory references are to the Government Code, unless otherwise noted.

[2] In addition to Joseph Kleitman, the petitioners include Ralph Faravelli, Patricia Figueroa, Nancy Noe, Mario Ambra, Rosemary Stasek and Mary Lou Zoglin.

the in camera review of minute books and the disclosure of the tape recordings of a closed session under certain specific circumstances. Accordingly, we find that the trial court cannot compel disclosure of the personal recollections of city council members with respect to a closed session, without improperly reading into the Act a discovery procedure which would violate the confidentiality of closed sessions which is inherent in the Act. We therefore issue a peremptory writ of mandate directing respondent court to vacate its order, and to enter a new and different order denying the motion to compel answers to interrogatories.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Closed Session Regarding the Lease of City Property*

The Mountain View Chamber of Commerce (hereafter, Chamber of Commerce) leases the site for its office building from the City of Mountain View (hereafter, City). In 1997, the Chamber of Commerce leased a City-owned site in Pioneer Park. However, the Chamber of Commerce was considering a move to a different site in Pioneer Park, and consulted with City staff in that regard. On March 25, 1997, the City Council of the City of Mountain View (hereafter, City Council) held a regularly noticed the City Council meeting which included a closed session with two agenda items. One of the closed session agenda items concerned renewal of the Chamber of Commerce lease. The agenda item read as follows:

"Conference with Real Property Negotiator (§ 54956.8)
Property: Chamber of Commerce
Negotiating Parties: City of Mountain View and Chamber of Commerce
Under Negotiation: Lease Terms"

The City Council took no action during the closed session with respect to the Chamber of Commerce lease. The closed session was not tape-recorded and no minutes were taken.

Subsequently, City continued to negotiate renewal of the Chamber of Commerce's lease. The negotiations included the possibility that City would lease property outside Pioneer Park to the Chamber of Commerce. In July 1997 the City Council conducted an open workshop study session regarding the site leased to the Chamber of Commerce. During that session, the City Council considered and rejected a proposal by the Chamber of Commerce that City lease a different site in Pioneer Park.

### B. *The Brown Act Litigation Regarding the Closed Session*

Gary B. Wesley (hereafter, Wesley) is a resident of City, who contends that the City Council's closed session of March 25, 1997, was illegal.

Wesley filed a complaint in respondent court which named the seven individual members of the City Council as defendants, and sought declaratory and injunctive relief for violations of the Brown Act. In his first amended complaint, Wesley alleges three Brown Act violations occurred during the closed session held March 25, 1997. First, Wesley alleges that the agenda item descriptions for the closed session did not comply with Brown Act requirements, because the description regarding the conference with the real property negotiator did not disclose that the City Council planned to discuss an alternate site in Pioneer Park not currently leased by the Chamber of Commerce. Second, Wesley alleges that the closed session was illegal under the Brown Act because City had not made a previous public policy determination to amend or exchange the existing Chamber of Commerce lease.

Third, Wesley alleges that correspondence he received from the city attorney indicates that the City Council intends to continue violating the Brown Act with regard to real property lease negotiations. Wesley attached to his complaint the city attorney's letter of September 4, 1997, in which the city attorney denied that any violations of the Brown Act had occurred with respect to the City Council's meetings concerning the Chamber of Commerce lease. The letter states, in pertinent part, "One of the key purposes of Section 54956.8 of the Brown Act is to 'grant authority to its negotiator. . . .' The closed session of July 15th [*sic*] was entirely consistent with that purpose."

C.   *Wesley's Motion to Compel Interrogatory Answers*

Wesley initiated discovery in his Brown Act lawsuit against the City Council members. He served 16 special interrogatories upon each council member defendant inquiring in detail about the March 25, 1997, closed session and related matters. The council members' responses included objections to answering interrogatory numbers one through six. These interrogatories state, "1. With regard to the March 25, 1997, closed session meeting of the Mountain View City Council, what is the full name of each person who attended all (or any part) of the session? [¶] 2. At the March 25, 1997, closed session meeting of the Mountain View City Council, was there any discussion of any of the lease terms of the then-existing ground lease between the City of Mountain View and the Mountain View Chamber of Commerce? [¶] 3. At the March 25, 1997, closed session meeting of the Mountain View City Council, was there any discussion of leasing to the Mountain View Chamber of Commerce a portion of Pioneer Park not currently leased to the Mountain View Chamber of Commerce? [¶] 4. Fully describe, or attach a copy of, each document you ever received in connection with the idea and/or proposal that the Mountain View Chamber of Commerce would lease any portion of Pioneer Park not currently leased to the

Mountain View Chamber of Commerce. [¶] 5. Set forth everything that was said at the March 25, 1997, closed session meeting of the Mountain View City Council with regard to the Chamber of Commerce's existing lease. [¶] 6. Set forth everything that was said at the March 25, 1997, closed session meeting of the Mountain View City Council with regard to entering into a lease for property in Pioneer Park not covered by the Mountain View Chamber of Commerce's existing lease."

The grounds for the City Council members' objections to interrogatory numbers one through six were that (1) the answers were privileged as official information, pursuant to Evidence Code section 1040; (2) the interrogatories sought information expressly protected by the Brown Act, section 54956.8, because the information concerned a closed session held for the purpose of giving instructions to a real property negotiator; and (3) disclosure would be against the public interest, because the public interest in confidentiality of the information outweighs the public interest in disclosure. The City Council members' response to interrogatory number four included the additional objection that the documents for which Wesley sought a description had already been produced to him.

Wesley then filed a motion to compel answers to interrogatory numbers one through six. He argued that no privilege protected the closed session information, because the official information privilege of Evidence Code section 1040 applies only to public employees, not to elected City Council members. Even if such a privilege exists, Wesley asserted, the City Council members waived the privilege by later disclosing a July 1997 staff report regarding the Chamber of Commerce's proposal for a different site in Pioneer Park. Wesley also argued that there is no authority, other than nonbinding opinions of the California Attorney General, for the proposition that it is improper for a City Council member to disclose what was said in closed session meeting of City Council.

The City Council defendants filed points and authorities in opposition to Wesley's motion to compel interrogatory responses. They argued that they are unable to disclose information obtained at a closed session because (1) Evidence Code section 1040 requires that information protected by a statutory privilege must be kept confidential, and section 54956.8, authorizing closed sessions for real property negotiations, creates such a privilege; (2) the public interest favors nondisclosure of City's confidential lease negotiations; (3) City Council members cannot disclose closed session information absent authorization from the City Council as a body; otherwise, such disclosures would render the confidential nature of a closed session meaningless; and (4) City did not waive any privileges by conducting the July

1997 open study session regarding the Chamber of Commerce lease, because no specific closed session information was disclosed during the study session.

### D. The Trial Court's Order Regarding Wesley's Motion to Compel

The trial court took the matter under submission after oral argument, and later issued a written discovery order granting in part and denying in part Wesley's motion to compel answers to interrogatories. The order compelled the City Council defendants to answer interrogatory numbers one through four, and number six, but not number five. The effect of the order is to require disclosure of the City Council members' personal recollections of the closed session of March 25, 1997, with the exception only of discussions pertaining to the existing Chamber of Commerce lease.

The City Council members then sought writ review of the trial court's discovery order. They filed a petition for writ of mandate, requesting that the order be vacated and a new and different order be entered denying the motion to compel answers to interrogatories. Petitioners also requested a stay of the discovery order while writ proceedings were pending. We granted a temporary stay of the discovery order and issued an order to show cause why the relief sought should not be granted.

## III. DISCUSSION

### A. The Standard of Review for Discovery Orders

■ Management of discovery lies within the sound discretion of the trial court, and, therefore, a discovery order is reviewed under the abuse of discretion standard. (*National Football League Properties, Inc.* v. *Superior Court* (1998) 65 Cal.App.4th 100, 108-109 [75 Cal.Rptr.2d 893].) However, review by way of extraordinary writ is appropriate when the petitioner seeks relief from a discovery order which may undermine a privilege, because appellate remedies are not adequate once the privileged information has been disclosed. (*Raytheon Co.* v. *Superior Court* (1989) 208 Cal.App.3d 683, 685 [256 Cal.Rptr. 425].) ■ Writ review may also be granted on "questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School District* v. *Superior Court* (1962) 58 Cal.2d

180, 185-186 [23 Cal.Rptr. 375, 373 P.2d 439].)[3] We find that writ review is warranted in the present case on both grounds.

B. *The Brown Act Authorizes Closed Sessions to Discuss Certain Matters*

■■■ "The Brown Act was adopted to ensure the public's right to attend the meetings of public agencies. (§ 54950.)"[4] (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 825 [25 Cal.Rptr.2d 148, 863 P.2d 218].) Accordingly, the Brown Act requires that the legislative bodies of local agencies, including city councils, hold their meetings open to the public except as expressly authorized by the Act. (§§ 54953, 54962; *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 374 [20 Cal.Rptr.2d 330, 853 P.2d 496].) The Act authorizes closed sessions to be held with regard to certain matters. (§ 54957; *Hamilton* v. *Town of Los Gatos* (1989) 213 Cal.App.3d 1050, 1055 [261 Cal.Rptr. 888].)

One of the matters which may be discussed in a closed session is real property negotiations. The Brown Act expressly provides that "a legislative body of a local agency may hold a closed session with its negotiator prior to the purchase, sale, exchange, or lease of real property by or for the local agency to grant authority to its negotiator regarding the price and terms of payment for the purchase, sale, exchange, or lease." (§ 54956.8.) As one commentator has noted, "The need for executive [closed] sessions in this circumstance is obvious. No purchase would ever be made for less than the maximum amount the public body would pay if the public (including the seller) could attend the session at which that maximum was set, and the same is true for minimum sale prices and lease terms and the like." (Schwing, Open Meeting Laws (1994) Executive Sessions, § 7.76, pp. 416-418.)

However, before a closed session is held with regard to real property negotiations, the legislative body must meet the notice requirements imposed by the Brown Act. First, a public session must be held prior to the closed session, in which the real property which is the subject of the negotiations and the person with whom the negotiator will negotiate are both identified. (§ 54956.8.) Second, section 54954.5, subdivision (b), of the Act requires the following information be included in the description of a closed session

---

[3]In 1998, section 54956.8 was amended to provide that the identity of the negotiator must be disclosed during a public session, and that a negotiator may be a member of the legislative body. (Stats. 1998, ch. 260, § 3.)

[4]Section 54950 provides, in pertinent part, "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly."

agenda item relating to real property negotiations.[5] "Property: (Specify street address, or if no street address, the parcel number or other unique reference, of the real property under negotiation) [¶] . . . [¶] Negotiating parties: (Specify name of party (not agent)) [¶] Under negotiation: (Specify whether instruction to negotiator will concern price, terms of payment, or both)."[6]

After a closed session is held, the legislative body must reconvene into open session and make a public report of the actions taken during the closed session. (§§ 54957.1, 54957.7, subd. (b).)

## C. *Disclosure of Closed Session Information Under the Brown Act*

The Brown Act does not expressly provide that the proceedings of a closed session are confidential. However, confidentiality may be strongly inferred from the various provisions of the Act pertaining to the recording of closed sessions. In particular, the Act provides that a legislative body has the option of keeping a minute book for closed sessions, in which the "topics discussed and decisions made" may be recorded. (§ 54957.2 [legislative body "may" keep a minute book].) The minute book is expressly made confidential: "The minute book made pursuant to this section is not a public record subject to inspection pursuant to the California Public Records Act . . . and shall be kept confidential. The minute book shall be available only to members of the legislative body or, if a violation of this chapter is alleged to have occurred at a closed session, to a court of general jurisdiction wherein the local agency lies." (§ 54957.2, subd. (a); see also *Register Division of Freedom Newspapers, Inc.* v. *County of Orange* (1984) 158 Cal.App.3d 893, 907 [205 Cal.Rptr. 92].) A legislative body also may choose to make tape recordings of its closed sessions. Section 54957.2, subdivision (a), provides that the minute book "may, but need not, consist of a recording of the closed session." (See *Hamilton* v. *Town of Los Gatos*, *supra*, 213 Cal.App.3d at p. 1055.)

Thus, the legislative body is not required by the Brown Act to keep minutes or make tape recordings of its closed sessions. Pursuant to section 54960, subdivision (b), however, a court may in its discretion require a legislative body to tape-record its closed sessions upon a judgment of a

---

[5]The Brown Act mandates the posting of an agenda for meetings of the legislative body. Section 54954.2, subdivision (a), provides, in pertinent part, that "At least 72 hours before a regular meeting, the legislative body . . . shall post an agenda containing a brief general description of each item of business to be transacted or discussed in the meeting, including items to be discussed in closed session."

[6]Section 54954.5, subdivision (b), was amended in 1998 to require that the agenda item description state the name of the negotiator or the name of the negotiator's agent or designee. (Stats. 1998, ch. 260, § 2.5.)

violation of any of several provisions in the Act restricting the scope of closed sessions, including section 54956.8 (instructions to real property negotiator).[7] Then, in an action alleging another violation of the Brown Act by that legislative body, the court may allow discovery of a transcript of the tape if certain procedural requirements are met. (§ 54960, subd. (c)(2).)[8]

Specifically, the five-step procedure for disclosure of the compulsory tape recording is as follows: (1) the party seeking the tape makes a noticed motion; (2) the motion includes identification of the closed session for which disclosure is sought; (3) the motion is accompanied by an affidavit which contains specific facts that a Brown Act violation occurred in the closed session; (4) if, after review of the motion, the court finds there is good cause to believe a violation occurred, the court may review in camera the tape of the closed session; and (5) if, following in camera review, the court concludes that disclosure of a portion of the tape would be likely to materially assist in the resolution of the litigation, the court has the discretion to make public a transcript of the tape. (§ 54960, subd. (c)(2).)

Thus, the Brown Act provides for disclosure of the proceedings which took place during a closed session in only two situations: (1) in camera review by the trial court of the minute book when it is alleged that a violation of the Brown Act has occurred during a closed session (§ 54957.2, subd. (a)); and (2) in camera review and disclosure of the tape recording of a closed session where there exists a prior judgment that the legislative body held unlawful closed sessions, a court order to make tape recordings, and a factual showing that another violation has occurred (§ 54960, subd. (c)). However, the Act is silent as to the circumstances, if any, under which members of local legislative bodies may be compelled to individually disclose their personal recollections of closed sessions which were not recorded in a minute book or tape recording. Moreover, the parties have not cited, nor have we located, any appellate decisions which address the issue.

We find some assistance in the opinions of the Attorney General. ■ While the opinions of the Attorney General are not binding on this

---

[7] Section 54960, subdivision (b), provides that "The court in its discretion may, upon a judgment of a violation of Section 54956.7, 54956.8, 54956.9, 54956.95, 54957, or 54957.6, order the legislative body to tape record its closed sessions and preserve the tape recordings for the period and under the terms of· security and confidentiality the court deems appropriate."

[8] Section 54960, subdivision (c)(2)(A), provides that the discovery procedures apply "In any case in which discovery or disclosure of the tape is sought by either the district attorney or the plaintiff in a civil action pursuant to Section 54959, 54960, or 54960.1 alleging that a violation of this chapter has occurred in a closed session which has been recorded pursuant to this section."

court, they may be persuasive. (See *Hamilton* v. *Town of Los Gatos*, *supra*, 213 Cal.App.3d at p. 1057.) ■ The Attorney General has concluded that "If the recording of a closed session discussion must be kept in confidence, it follows that oral communications of such information may not be made to the public." (76 Ops.Cal.Atty.Gen. 289, 291 (1993) [opining that a city may not make it a misdemeanor to disclose the substance of closed sessions].) Therefore, the Attorney General has "routinely observed that it would be *improper* for information received during a closed session to be publicly disclosed without authorization of the governing body as a whole." (*Id.* at p. 290, original italics.)

In so concluding, the Attorney General explained that, "The basis for our prior conclusions was that the statutes authorizing closed sessions and making records thereof 'confidential' would be rendered meaningless if an individual member could publicly disclose the information he or she received in confidence." (76 Ops.Cal.Atty.Gen., *supra*, at p. 290; see also 80 Ops.Cal.Atty.Gen. 231, 239 (1997) ["public statements by board members about the discussions in the closed session would violate the integrity of the confidential recording"].) We agree with the Attorney General. Disclosure of closed session proceedings by the members of a legislative body necessarily destroys the closed session confidentiality which is inherent in the Brown Act.

Further, in contrast to its provisions with respect to disclosure of minute books and tape recordings, the Brown Act makes no provision for compelled disclosure of the personal recollections of members of a legislative body regarding unrecorded closed sessions upon allegation or proof of a Brown Act violation. We conclude that it would be improper to read such a provision into the Act where none exists. ■ The rules of statutory construction provide that " '[u]nder the guise of construction, a court should not rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception, qualification, or modification that will nullify a clear provision or materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law.' " (*Frazier* v. *City of Richmond* (1986) 184 Cal.App.3d 1491, 1496 [228 Cal.Rptr. 376], fns. quoting 58 Cal.Jur.3d, Statutes, § 86, pp. 436-437.)

■ Had the Legislature intended that members of a legislative body be required, upon court order, to disclose their personal recollections of unrecorded closed sessions during discovery in Brown Act litigation, we are confident that such intention would have been made express in the Act.

Accordingly, as discussed below, we conclude that the trial court abused its discretion when it compelled the City Council members to answer interrogatories regarding their personal recollections of the closed session of March 25, 1997.

D. *The Order Compelling Answers to Interrogatories Is an Abuse of Discretion*

In support of the trial court's discovery order, Wesley argues a contrary interpretation of the Brown Act's silence with respect to the confidentiality of the personal recollections of City Council members regarding closed sessions. In Wesley's view, there is no authority for the proposition that anything presented or said in a closed session is protected by an absolute privilege. Additionally, Wesley contends that Evidence Code section 1040, subdivision (b)(2), which creates a privilege for official information received in confidence where disclosure is against the public interest, does not protect closed sessions.[9] Wesley asserts that City Council members cannot be exempt from disclosing what occurred during closed sessions, because, as he states, "Local legislative bodies would be free to discuss anything and everything in secret meetings and never answer any questions about what occurred. Such a privilege would virtually repeal the Brown Act."

Thus, Wesley's strongest argument is that he cannot prove that the City Council members violated the Act during their unrecorded closed session of March 25, 1997, unless the council members are compelled to answer his special interrogatories. However, as we have discussed, the Act does not authorize such discovery. It does not require legislative bodies to record their closed sessions, absent court order, and provides strong protections to any minute books and tape recordings which are kept. A trial court is authorized by the Act to compel disclosure of these items only in two situations, in order to protect the confidentiality of closed sessions. Where, as here, no minute book or tape recordings are available, no disclosure of closed session proceedings can be compelled by the trial court. Therefore, respondent court abused its discretion by exceeding its legal authority when it granted Wesley's discovery motion and ordered the City Council defendants to answer special interrogatory questions about their personal recollections of unrecorded closed session proceedings.

Moreover, procedural safeguards seem particularly appropriate when the discovery sought concerns matters which may impinge on the legislative

---

[9]While Evidence Code section 1040, subdivision (b)(2), has not been interpreted in the context of the Brown Act, we find that subdivision (b)(1), which provides that a public entity is privileged to refuse to disclose official information when the privilege is properly claimed and disclosure is forbidden by a state statute, necessarily includes the Brown Act's prohibition of disclosure of closed session proceedings except as provided by the Act.

privilege. ■ As this court has previously held, discovery into the subjective motives or mental processes of city council members is prohibited. (*City of Santa Cruz* v. *Superior Court* (1995) 40 Cal.App.4th 1146, 1148 [48 Cal.Rptr.2d 216].) ■ Finally, we believe that Wesley's contention that interested persons must be able to compel the members of legislative bodies to disclose their recollections of unrecorded closed sessions whenever a Brown Act violation is alleged, is one which should be addressed to the Legislature, rather than the courts.

## IV. Disposition

Let a peremptory writ of mandate issue directing respondent court to vacate its February 23, 1998, order granting the discovery motion of real party in interest Gary B. Wesley and compelling answers to interrogatories, and to enter a new and different order denying the motion. The temporary stay order is vacated. Each party to bear its own costs in this original proceeding.

Premo, Acting P. J., and Wunderlich, J., concurred

A petition for a rehearing was denied September 9, 1999, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied November 10, 1999. Mosk, J., was of the opinion that the petition should be granted.