TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
|  | : | No. 21-1102 |
| OPINION | : |  |
|  | : | May 26, 2022 |
| of | : |  |
|  | : |  |
| ROB BONTA | : |  |
| Attorney General | : |  |
|  | : |  |
| CATHERINE BIDART | : |  |
| Deputy Attorney General | : |  |

The HONORABLE CHRISTOPHER M. WARD, ASSEMBLYMEMBER, has requested an opinion on questions relating to closed sessions held under the Ralph M. Brown Act.

**QUESTIONS PRESENTED AND CONCLUSIONS**

1.  Under the Ralph M. Brown Act, may legislative support staff of individual city councilmembers attend a closed session to assist and advise their individual members in the performance of the members' duties?

No, as a general matter, legislative support staff of individual city councilmembers may not attend closed sessions.  If a person on such staff has an official or essential role to play in a particular closed session, however, then that person may attend for that purpose.

2.  If legislative support staff of individual city councilmembers are not permitted to attend a closed session as described in Question 1, may the members share information obtained in closed session with their individual support staff to assist the members in performing their legislative duties?

No.  City councilmembers may not share with their individual support staff, who were not permitted to attend a closed session, information obtained in that closed session unless the city council has authorized the disclosure of such information.

1

21-1102

3.  Would it violate the Ralph M. Brown Act for a city council acting as the city's housing authority to meet jointly in closed session with a board of housing commissioners, which the housing authority oversees, provided that statutory authorization exists for both entities to go into closed session?

No.  The Act does not prohibit a joint closed session of two local agencies, if each agency is authorized to meet in closed session based on the same exception and same set of facts.  Such agencies may together meet in closed session under that exception.

## BACKGROUND

The Ralph M. Brown Act is an open meeting law that applies to local government agencies in California.[1]  With certain exceptions, the Act requires the "legislative body" of a local agency to deliberate and take action in meetings that are open to the public.[2] As the Act explains, public agencies exist to help conduct the people's business, and the people "insist on remaining informed so that they may retain control over the instruments they have created."[3]

At the same time, however, the Act recognizes exceptional situations where the need for confidentiality outweighs the interest in openness.[4]  An agency may therefore at times meet in closed session, but only if the Act expressly authorizes it.[5]  The Act expressly authorizes a closed session in more than a dozen narrow circumstances.

For example, an agency may meet in closed session to confer with its attorney about "pending litigation" when open discussion would prejudice the agency, or to direct its negotiator of a property transaction on particular matters such as price.[6]  An agency

---

[1] Gov. Code, §§ 54950 et seq.

[2] *Id.*, §§ 54950, 54951 (defining "local agency"), 54952 (defining "legislative body"), 54952.2, subd. (a) (defining "meeting"), 54953, subd. (a).

[3] *Id.*, § 54950.

[4] See 75 Ops.Cal.Atty.Gen. 14, 20 (1992) (explaining that "despite the fact that the general thrust of the Act is for public agencies to hold their meetings, deliberate, and take action in public, the Act recognizes the need at times to both deliberate and act in private when necessary due to important policy considerations").

[5] *Ricasa v. Office of Admin. Hearings* (2018) 31 Cal.App.5th 262, 273 ("Closed sessions may only be conducted if authorized by statute," citing Gov. Code, § 54962).

[6] Gov. Code, §§ 54956.8 (real-estate exception), 54956.9 (pending-litigation exception).

21-1102

may also meet in closed session to handle certain employee personnel matters.[7]  Other exceptions relate to labor negotiations, a license application by those with criminal records, a final draft audit report from the Bureau of State Audits, pension fund investments, a threat to the security of public facilities or essential public services, ongoing criminal investigations by a multijurisdictional law enforcement agency, and an application for early withdrawal of funds based on financial hardship.[8]

Before meeting in closed session, an agency must list and describe any closed-session items on the public meeting agenda and announce in open session the closed-session items to be discussed.[9]  In closed session, the agency may only discuss the specific items covered in its announcement.[10]  After the closed session, the agency must reconvene in open session and report certain actions taken in the closed session.[11]

---

[7] Gov. Code, § 54957, subd. (b) (authorizing closed session to hear specific complaints against an employee, and consider evaluation, appointment, discipline, or dismissal of employee).

[8] See Gov. Code, §§ 54957.6 (labor negotiations), 54956.7 (license applications), 54956.75 (audit reports), 54956.81 (pension fund investments), 54957, subd. (a) (threats to public facilities or essential public services), 54957.8 (multijurisdictional criminal investigations), 54957.10 (early withdrawal of funds).  Certain other exceptions only apply to specified agencies.  For instance, a county board of supervisors may meet in closed session when acting as a specified health plan's governing board to discuss contracts, trade secrets, or other enumerated matters.  (*Id*., § 54956.87.)  A joint powers agency formed for purposes of insurance pooling, and those joint powers agency's local agency members, may meet in closed session to discuss certain claims for payment.  (*Id*., § 54956.95.)  And public banks, hospitals, school districts, and community college districts may hold closed session meetings to consider enumerated topics.  (*Id*., §§ 54956.97, 54962.)

[9] Gov. Code, §§ 54954.2, subd. (a)(1) (agenda must include closed-session items), 54954.5 (specifying permissible closed-item agenda descriptions), 54957.7, subd. (a) (disclosure in open session of items to be discussed).

[10] Gov. Code, § 54957.7, subd. (a).

[11] Gov. Code, §§ 54957.1, 54957.7, subd. (b).

21-1102

## ANALYSIS

### 1. Under the Ralph M. Brown Act, may legislative support staff of individual city councilmembers attend a closed session to assist and advise their individual members in the performance of the members' duties?

Neither the Legislature nor the courts appear to have examined this specific question. Neither have we, but our prior opinions recognize that only persons who have an "official or essential" role may attend a closed session.[12] The Legislature is presumed to be aware of our opinions, and thus, this test.[13] Indeed, the legislative history of the Act references the test.[14]

In general, a person has an "official" role if they are authorized by statute to attend the closed session. This includes members of the legislative body conducting the closed session, as well as other individuals specifically identified in an applicable closed-session exception.[15] Anyone else may attend a closed session only if their presence is "essential" to the agency's ability to conduct its closed-session business.

Past opinions set forth the rationale for the "official or essential" test, explaining that including individuals without an official or essential role would convert the closed session into a semi-closed session, which the Act does not authorize.[16] For example, in an early opinion construing the Act, we concluded that an agency could not invite

---

[12] 88 Ops.Cal.Atty.Gen. 16, 23 (2005) (stating that "[t]he general rule is that closed-session access is permitted only to people who have 'an official or essential role to play'" in the closed meeting," quoting 86 Ops.Cal.Atty.Gen. 210, 215 (2003), and citing prior opinions).

[13] See *City of Woodlake v. Tulare County Grand Jury* (2011) 197 Cal.App.4th 1293, 1302, fn. 4 (providing that the Legislature is presumed to be aware of Attorney General opinions, and if they misconstrued legislative intent, "some corrective measure would have been adopted"); *People v. Union Oil Co.* (1968) 268 Cal.App.2d 566, 571 (stating that the lapse of time after an opinion "supports the inference that if it were contrary to legislative intent, some corrective measure would have been adopted").

[14] See, e.g., Sen. Governance & Finance Com., Rep. on Assem. Bill 246 (2013–2014 Reg. Sess.), hearing date May 15, 2013, as amended Feb. 6, 2013, pp. 1–2 (explaining that Brown Act only allows essential staff to attend closed session).

[15] See, e.g., Gov. Code, § 54956.9 (pending-litigation exception identifying agency counsel).

[16] 46 Ops.Cal.Atty.Gen. 34, 35 (1965).

4

members of the press to a closed session on personnel matters.[17] We explained that "neither members of the press nor any other individuals who are not witnesses in the matter being investigated" could attend, because the "reasons for the legislative authorization" for the closed session—which we described as "[s]ecrecy, confidentiality, and absence of publicity"—would be "rendered nugatory."[18]

More recently, we concluded that a local agency could allow an applicant for disability retirement, as well as the applicant's representative, to attend a closed session convened under the personnel exception.[19] We explained that the county retirement board could allow the applicant and representative to participate as an "interested party" or "advocate" if the board believed that they would have "an official or essential role to play in the closed session."[20] We recognized that the board "may consider that the attendance of the applicant and his or her representative at the closed session would be essential for a determination on the merits of the disability retirement application," and that because no "members of the public" would be present, the meeting would not become an impermissible "semi-closed" session.[21]

We have applied this "official or essential" test to the question of whether public officials who are not members of a legislative body may attend closed sessions. In an opinion raising a similar question to the one presented here, we determined that an alternate member of a legislative body could not attend a closed session, unless the alternate was serving as a member in place of an absent member.[22] Even though we recognized that the alternate's presence at all sessions would be beneficial by enhancing the discussion and fostering the efficient, seamless replacement of a member who was absent, the alternate's presence in the closed session was unauthorized.[23] We explained: "Unless sitting in place of an absent or disqualified regular member, an alternate member may not attend a closed session without converting the session into an unauthorized 'semi-closed meeting.'"[24]

---

[17] *Ibid*.

[18] *Id*. at pp. 34–35.

[19] 88 Ops.Cal.Atty.Gen., *supra*, at pp. 20, 23.

[20] *Id*. at p. 23.

[21] *Id*. at p. 24.

[22] 82 Ops.Cal.Atty.Gen. 29, at pp. 33–34 (1999).

[23] *Id*. at pp. 32–34.

[24] *Id*. at pp. 33–34.

21-1102

And in a particularly relevant opinion concerning a public official, we determined that a mayor could not attend a redevelopment agency's closed session convened under the real-estate exception, which allows an agency to meet in closed session to instruct its negotiator on specified matters.[25]  Because the mayor was not the agency's negotiator, the mayor had "no official role to play at the redevelopment agency's closed session under the express provisions" of the exception.[26]  We disagreed that the mayor, by providing advice on the property transaction at the agency's request, had an essential role as "support staff" of the redevelopment agency.[27]  We recognized that the mayor's involvement in the negotiating strategy might be beneficial, but determined that it was not essential.[28]

The requestor here lists three ways in which the support staff of an individual city councilmember could have a role at a closed-session meeting:  (1) to administer the meeting, (2) to take notes, and (3) to provide their councilmember with relevant information because such staff "may have unique knowledge or information about a particular matter that could assist Councilmembers to better serve their constituency."[29]  No statute provides for individual support staff of members to play these roles at closed session, so these are not "official" roles for such staff.  Nor do we see how any of these constitute an "essential" role, as we explain below.

As an initial matter, we are informed that most city councils in California do not have individual legislative staffers attend closed sessions.[30]  This state of affairs suggests that councilmembers are generally fully capable of performing their official legislative duties without the presence of individual staff in closed meetings, and that such staff are generally not needed in closed session to perform any of the three roles listed above.

As to "administering" the meeting, it is not entirely clear what this would entail. We were not provided any details about how councilmembers' individual staff might

---

[25] 83 Ops.Cal.Atty.Gen. 221 (2000); see Gov. Code, § 54956.8 (real-estate exception).

[26] 83 Ops.Cal.Atty.Gen., *supra*, at p. 224.

[27] *Ibid*.

[28] *Id*. at p. 225.

[29] Assemblymember Christopher M. Ward, letter to Senior Assistant Attorney General Mollie Lee, Nov. 2, 2021, p. 1, on file.

[30] League of California Cities, letter to Deputy Attorney General Catherine Bidart, Mar. 3, 2022, p. 3, fn. 11, on file; see also Assemblymember Christopher M. Ward, letter to Senior Assistant Attorney General Mollie Lee, Nov. 2, 2021, p. 1, on file (providing factual background regarding the City of San Diego and noting that currently staff working for individual councilmembers do not attend closed sessions).

21-1102

administer a meeting, and we are mindful that it is the legislative bodies themselves who conduct meetings, including closed sessions. In the absence of further details, and given our understanding that most city councils operate in closed sessions without individual councilmembers' support staff, we cannot say the presence of such staff is a necessity.

As to taking notes, the Act expressly authorizes an agency to designate a clerk or other officer or employee of the agency to take notes at and to record closed sessions.[31] This indicates that the Legislature did not intend for anyone else to perform this role. It therefore cannot be "essential" for a member's individual staff to play that role. If an agency would like to have a note-taker at closed sessions, then the agency, as a whole, may designate a single employee to attend each closed session for note-taking and recordings. But individual councilmembers may not designate their own individual note-takers to attend closed sessions.

As to the attendance of individual members' support staff because they "may have" information that would "assist Councilmembers to better serve their constituency," this also falls short of an "essential" role in conducting the business of a closed session. We recognize that there may be members who believe that their individual staff provide essential assistance in any setting. But closed sessions exceptions must be interpreted narrowly.[32] A person's presence may be beneficial to an agency's closed session deliberations but still be unauthorized because the person has no "essential" role to play—as with the mayor and the alternate councilmember in our prior opinions. Here, informational assistance from an individual member's staff must confer more than a mere potential benefit; instead, it must be essential to the particular business of the legislative body as a whole that provides the basis for the closed session.

We therefore conclude as a general matter that staff of individual councilmembers do not have a role that would authorize them to attend closed sessions.[33] We emphasize, however, that who may attend any given closed session will always depend on the particular context. Accordingly, there may be instances in which an individual member's support staff has a qualifying role to play in a particular closed session. For example, they could be an essential witness with personal knowledge relevant to a particular closed

---

[31] See Gov. Code, § 54957.2.

[32] Cal. Const. art. I, § 3(b)(2) (mandating that a statute be "broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access"); *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 174.

[33] We note that we are not presented with a situation where an individual member has a disability who requires assistance in order to participate in a closed session, which would be a separate inquiry and entail a different analysis.

7

21-1102

session matter.[34]  Like anyone else, however, without a qualifying role in the meeting, their presence would undermine the Act's rationale for the closed session and transform the meeting into an unlawful semi-closed session.

**2. If legislative support staff of individual city councilmembers are not permitted to attend a closed session as described in Question 1, may the members share information obtained in closed session with their individual support staff to assist the members in performing their legislative duties?**

As a threshold matter, we assume that the legislative body has not already disclosed the information asked about here.  After a legislative body's closed session, it must make certain disclosures.[35]  In addition, the body may authorize, by a vote of the body, certain other disclosures.[36]  Absent such authorization, and for the reasons explained below, we conclude that the Act prohibits a councilmember from disclosing closed-session information to the member's own support staff.

This conclusion flows from our conclusion in Question 1 that individual support staff generally may not attend closed sessions.  If someone is not authorized to attend a closed session, it follows that they are likewise not authorized to obtain information from that closed session.  A contrary conclusion would undermine the confidentiality of the closed-session proceedings.  Each one of the Act's closed-session exceptions reflects a legislative determination that confidentiality outweighs the ideal of open government in that circumstance.[37]  That confidentiality would evaporate if closed-session information could be shared with individuals excluded from the closed session.

Our conclusion is also compelled by two specific sections of the Act that reflect a general intent for closed-session information to be kept confidential.  The first provision,

---

[34] See 88 Ops.Cal.Atty.Gen., *supra*, at pp. 23–24 (observing that "witnesses may attend closed sessions to present factual information to the legislative body; they would not be present 'as members of the public' but rather as percipient witnesses," quoting 80 Ops.Cal.Atty.Gen. 308, 311, fn. 5 (1997)); 46 Ops.Cal.Atty.Gen., *supra*, at p. 34.

[35] Gov. Code, §§ 54957.1, 54957.7.

[36] See Gov. Code, § 54963, subd. (a) ("A person may not disclose confidential information that has been acquired by being present in a closed session authorized by Section 54956.7, 54956.8, 54956.86, 54956.87, 54956.9, 54957, 54957.6, 54957.8, or 54957.10 to a person not entitled to receive it, unless the legislative body authorizes disclosure of that confidential information").

[37] 63 Ops.Cal.Atty.Gen. 153, 154 (1980) (explaining with reference to exceptions that Act recognizes "certain situations where this basic policy of 'government in the sunshine' is outweighed by the necessity for confidentiality").

8

Government Code section 54963, protects the confidentiality of information from certain closed sessions by prohibiting disclosure to those who are "not entitled to receive it."[38] And individual support staff are not "entitled to receive" confidential information from those closed sessions. Thus, section 54963 prohibits a member from disclosing confidential information from those closed sessions to their individual staff. Indeed, the section contains provisions prescribing punishment to members for willful unauthorized disclosures.[39]

We recognize that section 54963, in the context of prescribing punishment for unauthorized disclosures, contemplates that such disclosures may occur *by* employees (as well as by members).[40] This contemplates that there may be circumstances when an employee will receive closed-session information. But that does not mean that all employees have a blanket authorization to receive closed-session information. We believe that it instead simply accounts for situations when an employee receives closed-session information, whether authorized (such as in the case of an authorized closed-session attendee) or not, and the employee improperly discloses it. We see nothing indicating that staff who are not authorized to attend the closed session in the first place may nevertheless receive confidential information from the closed session.[41]

The second relevant provision, Government Code section 54957.2, provides that the minutes of closed sessions "shall be kept confidential" and are "available only to members of the legislative body."[42] This provision evinces a clear intent to keep closed

---

[38] Gov. Code, § 54963, subd. (a) ("A person may not disclose confidential information that has been acquired by being present in a closed session authorized by Section 54956.7, 54956.8, 54956.86, 54956.87, 54956.9, 54957, 54957.6, 54957.8, or 54957.10 to a person not entitled to receive it, unless the legislative body authorizes disclosure of that confidential information").

[39] Gov. Code, § 54963, subd. (c) (providing that violation of section "may be addressed by the use of such remedies as are currently available by law, including, but not limited to" injunctive relief and referral of legislative member to grand jury).

[40] Gov. Code, § 54963, subd. (d) (stating that prerequisite to employee discipline is notice of section's requirements or training on them).

[41] We note that the section does not apply to certain disclosures, such as confidential inquiries to prosecutors concerning a perceived violation and disclosures made of a perceived illegal action in closed session, but as these have no apparent connection to members' staff, they do not affect our analysis. (Gov. Code, § 54963, subds. (e) & (f).)

[42] Gov. Code, § 54957.2. If a violation of the Act at the closed session is alleged, then the recording is also available to a court. (*Ibid*.)

21-1102

sessions confidential.  It would be undermined if staff could gain information from the closed session from their member after the session concludes.

A Court of Appeal decision, which predated section 54963, held that section 54957.2's protection of closed-session minutes and recordings precludes discovery requests of member recollections of a closed session.[43]  The court found nothing in the Act providing for that type of disclosure.[44]  The court observed that, even though the Act did not at that time expressly provide for the confidentiality of closed-session proceedings, a confidentiality requirement "may be strongly inferred from the various provisions of the Act pertaining to the recording of closed sessions."[45]  The court explained:

> In particular, the Act provides that a legislative body has the option of keeping a minute book for closed sessions, in which the "topics discussed and decisions made" may be recorded. (§ 54957.2 [legislative body "may" keep a minute book].) The minute book is expressly made confidential: "The minute book made pursuant to this section is not a public record subject to inspection pursuant to the California Public Records Act ... and shall be kept confidential. The minute book shall be available only to members of the legislative body or, if a violation of this chapter is alleged to have occurred at a closed session, to a court of general jurisdiction wherein the local agency lies." (§ 54957.2, subd. (a); see also *Register Division of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 907, 205 Cal.Rptr. 92.)[46]

---

[43] *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 326–327; see Stats. 2002, ch. 1119, § 1 (enacting section 54963), Stats. 1981, ch. 968, § 31 (enacting current version of section 54957.2).

[44] *Kleitman v. Superior Court*, *supra*, 74 Cal.App.4th at pp. 326–327 ("[T]he Act provides only for the in camera review of minute books and the disclosure of the tape recordings of a closed session under certain specific circumstances. Accordingly, we find that the trial court cannot compel disclosure of the personal recollections of city council members with respect to a closed session, without improperly reading into the Act a discovery procedure which would violate the confidentiality of closed sessions which is inherent in the Act").

[45] *Id*. at p. 332.

[46] *Ibid*.

The court then agreed with prior opinions of ours concluding that disclosure of closed-session proceedings would destroy the confidentiality inherent in the Act.[47]  First, because "the recording of a closed session discussion must be kept in confidence, it follows that oral communications of such information may not be made to the public."[48]  And further, "the statutes authorizing closed sessions and making records thereof 'confidential' would be rendered meaningless if an individual member could publicly disclose the information . . . received in confidence."[49]

The reasoning in these prior opinions remains true.[50]  And applying that reasoning here supports the conclusion that councilmembers may not disclose closed-session information to their staff who were not authorized to attend the closed session.

**3.  Would it violate the Ralph M. Brown Act for a city council acting as the city's housing authority to meet jointly in closed session with a board of housing commissioners, which the housing authority oversees, provided that statutory authorization exists for both entities to go into closed session?**

We are given no context for this question other than that it pertains to the City of San Diego's Housing Authority, which oversees a Board of Housing Commissioners.[51]  Publicly available information indicates that the latter advises the former on items including "proposed changes to housing policy, property acquisitions, other financial

---

[47] *Id*. at p. 334.

[48] *Ibid*., quoting 76 Ops.Cal.Atty.Gen. 289, 291 (1993).

[49] *Id*. at p. 334, quoting 76 Ops.Cal.Atty.Gen., *supra*, at p. 290 and citing 80 Ops.Cal.Atty.Gen. 231, 239 (1997).

[50] Cf. *County of Los Angeles v. Superior Court* (2005) 130 Cal.App.4th 1099, 1105–1107 (rejecting discovery of closed-session minutes because Legislature made them exempt from disclosure); 86 Ops.Cal.Atty.Gen*., supra,* at p. 214 (concluding that, under similar state open meetings law, legislative body's appointee to board could not disclose board's closed-session information to appointing body or its counsel) & *id*. at p. 215 (stating that under similar state open meetings law, "Without the right to be present at a closed session of the Board, the other state department employees and department counsel would not qualify to receive closed-session information").

[51] These entities are subject to the Brown Act.  (See Gov. Code, §§ 54951 ["local agency" includes general and charter cities], 54952, subd. (a) ["legislative body" includes "governing body of a local agency"]; *Torres v. Board of Commissioners* (1979) 89 Cal.App.3d 545, 547 [Brown Act applies to housing authority].)

commitments, and agency operations, including allocation of resources, revisions to personnel policies and annual administrative and operating budgets."[52]

The question assumes that statutory authorization exists for each body to go into closed session. As explained below, we see nothing in the Brown Act to prohibit two bodies from jointly meeting in closed session, as long as each body qualifies under the same set of facts for the same express exception authorizing a closed session. Each one of the Act's closed-session exceptions reflects a circumstance where the need for confidentiality outweighs the ideal of open meetings. If legislative bodies could not meet together in closed session when they jointly satisfy an exception, it would thwart the Act's intent to allow closed sessions under that exception.

One commenter asserts that the Act precludes joint closed sessions because the Act does not expressly provide for them. This view is based on section 54962, which states "[e]xcept as expressly authorized . . . no closed session may be held by any legislative body of any local agency."[53] In the commenter's view, the absence of an express reference to joint closed sessions means they are never authorized. We disagree.

The Legislature added this "expressly authorized" language at the same time that it amended the pending-litigation exception to make that exception the sole basis for a closed session to protect the attorney-client privilege.[54] As we have explained in our Brown Act manual:

> Under the Brown Act, closed sessions must be expressly authorized by explicit statutory provisions. Prior to the enactment of section 54962, the courts and this office had recognized impliedly authorized justifications for

---

[52] According to its website, the San Diego Housing Commission Board of Commissioners reviews and advises on those items for the Housing Authority of the City of San Diego, which is composed of the City's nine-member City Council. (https://www.sdhc.org/governance-legislative-affairs/sdhc-board-of-commissioners/ [as of May 13, 2022]).

[53] The section in full provides:

> Except as expressly authorized by this chapter, or by Sections 1461, 1462, 32106, and 32155 of the Health and Safety Code, or by Sections 37606, 37606.1, and 37624.3 of the Government Code as they apply to hospitals, or by any provision of the Education Code pertaining to school districts and community college districts, no closed session may be held by any legislative body of any local agency.

Gov. Code, § 54962.

[54] Stats. 1987, ch. 1320, §§ 5 & 6.

closed sessions. . . . However, that legislation made it clear that closed sessions cannot be conducted unless they are expressly authorized by statute. Although confidential communication privileges continue to exist in other statutes such as the Public Records Act and Evidence Code section 1040, these provisions no longer can impliedly authorize a closed session.[55]

In our view, the amendment prohibiting closed sessions "except as expressly authorized," made in tandem with the attorney-client privilege amendments, merely reflects an intent to prohibit implied exceptions based on confidentiality protections.[56] In light of that apparent purpose, we do not believe that exceptions expressly authorizing closed sessions must be disregarded when they are met jointly by two legislative bodies rather than one.

Finally, we acknowledge that the various exceptions in the Act authorize "a legislative body" to meet in closed session, which could be read to suggest that no more than a single legislative body may meet in closed session.[57] But we believe that these references to "legislative body" in the singular merely reflect a legislative drafting technique that uses the singular, rather than reflect an intent to preclude two legislative bodies from meeting under an exception.[58] "[U]nder the general rules of statutory construction, the use of a word in the singular form is interchangeable with the use of the word in the plural form."[59] And the Government Code expressly instructs at the outset that the singular includes the plural.[60]

---

[55] California Attorney General's Office, The Brown Act: Open Meetings for Local Legislative Bodies (2003), p. 30, internal citations omitted.

[56] See, e.g., 88 Ops.Cal.Atty.Gen., *supra*, at p. 18 ("The Legislature's addition of section 54962 has effectively eliminated the possibility of finding an *implied* authorization for a closed session"); California Attorney General's Office, The Brown Act: Open Meetings for Local Legislative Bodies (2003), p. 37.

[57] See, e.g., Gov. Code, §§ 54956.7 (authorizing "a legislative body" to meet in closed session), 54956.8 (same), 54956.81 (same).

[58] See Martineau, Drafting Legislation and Rules in Plain English (3d. reprint, 1998) p. 67 ("A traditional principle of drafting legislation or a rule is to make the subject of a sentence singular rather than plural").

[59] *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 907.

[60] Gov. Code, § 13 ("The singular number includes the plural, and the plural the singular").

Determining whether two legislative bodies together satisfy a closed-session exception in any particular situation would, of course, be a fact-specific inquiry. But we offer by way of illustration the pending-litigation exception, which could be jointly invoked by two agencies that share an attorney and are on the same side of litigation.[61] Indeed, a published case illustrates that the two agencies identified in this question were both plaintiffs together in the same case and represented by the same attorneys.[62] We believe that in that particular circumstance, or other circumstances where two bodies together meet the requirements of a closed-session exception, they may jointly meet in closed session for the limited purposes of the exception.

---

[61] See Gov. Code, § 54956.9. As prior opinions indicate, two agencies would not satisfy the pending-litigation exception if, for instance, they were not on the same side, (62 Ops.Cal.Atty.Gen. 150 (1979)), or one of them was not a party to the litigation (see *Shapiro v. Board of Directors* (2005) 35 Cal.Rptr.3d 826; see also Gov. Code, § 54956.9, subds. (d) (defining pending litigation) & (h) (defining when local agency is a "party")).

[62] *San Diego Housing Com'n et al v. Industrial Indem. Co.* (1998) 68 Cal.App.4th 526, 530 (stating that case is brought "by plaintiffs and respondents San Diego Housing Commission and San Diego Housing Authority"); see https://www.sdhc.org/governance-legislative-affairs/sdhc-board-of-commissioners/ [as of May 13, 2022] (referring to "The San Diego Housing Commission (SDHC) Board of Commissioners (Board)").